(No. 29917.—

JAMES McCLEARY *et al.*, Appellees, *vs.* ELIZABETH K. LEWIS *et al.*, Appellants.

*Opinion filed March 19, 1947—Rehearing denied May 22, 1947.*

WHAM & WHAM, of Centralia, and CREIGHTON & KERR, of Fairfield, for appellants.

MILLS, UMFLEET & MILLS, of Fairfield, for appellees.

Mr. JUSTICE STONE delivered the opinion of the court:

The circuit court of Wayne county set aside a certain administratrix's deed issued under proceedings in the county court of that county for sale of real estate to pay debts. It also set aside the deed of the purchaser at that sale to the appellant Elizabeth K. Lewis, who was the administratrix of the estate. The chancellor found a fiduciary relation existed between Lewis and the appellees and that the record showed an abuse of that confidential relation. The chancellor found that the appellees are the owners by devise and inheritance of the eighty acres of land involved, subject to an oil and gas lease, and subject also to a mortgage for $1200, and referred the cause to a master for taking account of rents.

It appears that one William G. McCleary died in California, December 4, 1940. He was seized of this tract of land in Wayne county. The appellees in this cause of action were his heirs and devisees. Appellant Lewis was, by the county court of Wayne county, on March 10, 1941, appointed administratrix with the will annexed, and on August 27, 1941, she filed a petition in the county court for sale of real estate to pay debts. On October 1, following, the county court entered an order directing the sale of the real estate to pay debts and a sale at public auction was advertised and held on October 28, 1941, at which this tract of land was struck off to Grace L. Knodell, an aunt of appellant Lewis, on her bid of $1525. The sale was approved by the court and conveyance ordered. Lewis, as administratrix, executed a deed dated November 13, 1941, to Knodell, which was duly recorded.

These facts are set up in the complaint and the allegations of the complaint further are that Grace L. Knodell was not a true purchaser but in fact purchased the property for the administratrix; that the records of the county disclose that on November 13, 1941, the day the administratrix's deed was executed, a mortgage was also executed from Grace L. Knodell and her husband to Minnie F. Davis, securing a note for $1200. It is charged that this loan was procured by appellant Lewis and her attorney and on March 19, 1942, ten days after the discharge of appellant Lewis as administratrix, Knodell deeded the property to her. Appellees did not know of this tranaction until a few months before starting this suit.

The complaint sets out that an oil lease had been executed on the land to the Pure Oil Company. The prayer of the complaint was that the deed of Lewis, as administratrix, to Knodell, and the latter's deed to her be set aside and appellees be decreed to be the owners of the land subject to the oil and gas leases and to the mortgage indebtedness to Minnie F. Davis. Appellant Lewis, by verified answer, denied all the essential allegations of the complaint and averred that appellees and her predecessors in title have, by their conduct, ratified and confirmed the sale of the property to Knodell, have been guilty of *laches* in the preparation of their claim, and are estopped in equity from asserting such claim. Grace L. Knodell and Minnie F. Davis denied all irregularity in connection with the administratrix's sale and the mortgage, and denied that appellees are entitled to relief. There is no controversy as to the validity of the oil and gas leases.

The chancellor heard the evidence in open court, including the proceedings leading up to and including the sale of real estate to pay debts and all steps in the transaction thereafter, and, as above stated, found that the deeds should be set aside. It appears that claims against the estate amounted to something over $700.

On July 31, 1941, appellee G. T. Medler, who was living in California, wrote to appellant Lewis, expressing a desire that the real estate be not sold for payment of debts, and offering, if it could be arranged, that he pay one half of the debts and costs and have one half of the land set off to his mother, his sister and himself. Appellant Lewis replied that this could not be done without all of the heirs agreeing to it, "and from the way James talked when he was in our office he would not be willing to do it as there seemed to be some feeling in the matter with James." On October 13, 1941, prior to the sale, Medler wrote to appellant Lewis as follows: "Dear Madam: On September 10 I wrote you regarding the estate of W. G. McCleary pertaining to us advancing the necessary funds to cover costs of bills and costs of administration to eliminate the necessity of selling the property. It may be that the law of the State of Illinois does not permit the above stated procedure either and you did not think it necessary to answer my letter. Will appreciate any information as to how to proceed in order to eliminate the disposal of the property. I was of the opinion that there would be some provision in the law there that would give the people a choice of some kind in the settlement of an estate, but maybe there is no such thing. You should know. You were highly recommended by Mr. Thomas. Very truly yours."

The record shows no reply to this letter. Medler's letter of September 10, written before entry of the decree of sale, offered to advance "the entire costs of all bills and costs of administration in order to eliminate the necessity of selling the property to raise funds to cover said costs. I will wire or mail a certified check for the required amount of money just as soon as you notify me of the amount."

It appears that one Dave Berg, who lived in the neighborhood of this land, had attended the sale and bid on the property. He testified that he permitted it to go to

Knodell thinking she was one of the heirs, and afterward asked her if she would take $400 "for her bargain." She said she would let him know but he did not hear from her thereafter. Knodell testified for appellant and she did not deny Berg's testimony but testified that after the sale her husband and a man named Sprague advised her that she had done a very unwise thing in buying it, and that she sold it to appellant Lewis. There is no testimony as to what consideration Mrs. Knodell received from Lewis. It is apparent from the record that she did not pay for the land at the time she bought it. The terms of the sale were advertised "cash." The administratrix's report of sale, after stating Knodell was the highest and best bidder, stated, "Thereupon said Grace L. Knodell having complied with the terms of said sale by being ready to pay all cash upon the approval of this report, * * *."

There is no evidence as to how she paid the $1525 consideration for the land other than that upon the day of the date of the administratrix's deed, November 13, 1941, she executed a note and mortgage on the land for $1200, for a loan from defendant Minnie F. Davis, and the check given to her was endorsed and cashed by Lewis as administratrix. It also appears that a check of the Pure Oil Company dated November 14, 1941, in payment of rent under its lease, was issued to Knodell and endorsed by her to appellant Lewis as administratrix. There is no other evidence of payment of the balance of the purchase price. The order for sale found the deficiency of the personal estate to pay debts and costs of administration to be $707.30. The consideration stated in the warranty deed from Knodell and her husband to appellant Lewis was $1.00 and the assumption of the $1200 note and interest thereon, secured by a mortgage on the land.

Appellant Lewis explained her purchase of the land from Knodell, just ten days after her discharge as admin-

istratrix of the estate, by testifying that Knodell bought the property on her recommendation and that of her attorney, and she felt responsible, and, as soon as she got in a position where she could relieve her of the land, she took it. The record does not explain why Mrs. Knodell was thus dissatisfied with her bargain when it was apparent from Berg's testimony that he was interested in paying her more than she paid for the land. The chancellor who heard the testimony found that Knodell did not pay the administratrix the price of the sale or any part thereof at the time of the sale, as required by the terms thereof; that she did not pay anything for the land until she had made the loan of $1200, at the time of the execution of the deed.

The chancellor found that Grace Knodell did not bid off and purchase the real estate in good faith for her own account but that the same was bid off and purchased for the account, use and purpose of appellant Lewis, then the qualified and acting administratrix of the estate; that it was the intention, on the part of Knodell and Lewis, that the same should be subsequently conveyed to appellant Lewis.

Appellants argue that the record does not support the finding that appellant Lewis was in fact the purchaser, and that appellees are estopped by *laches* from asserting any right or claim in the matter. That appellant Lewis, as administratrix, occupied a fiduciary relation to the appellees is not denied, and the rule, relied upon by appellees, is that purchase by an administrator through the intervention of a third party, who is in fact but a nominal purchaser, is the same as a purchase directly by the administrator, but that to set aside such deed it is necessary that the party alleging the void sale show by competent evidence that the third party, through whom the purchase was made, was in fact but the nominal purchaser and was acting for the administrator. (*Mancinelli* v. *de Bartolo*, 268 Ill. 198.)

Such proof, if made, shows fraud. Fraud is never to be presumed but must be proved by clear and convincing evidence, though in many cases direct and positive evidence may not be adduced to show fraud. Fraud may be established by circumstances as well as by direct testimony. *Duncan* v. *Dazey,* 318 Ill. 500.

That a fiduciary relationship existed between Elizabeth K. Lewis and appellees is conceded. Appellee Glen T. Medler, a resident of California, through his California attorney, employed attorneys in Illinois to administer his father's estate in Illinois. They wrote him, advising that their secretary, Elizabeth K. Lewis, was familiar with the duties of an administrator and recommended that she be allowed to act. Relying upon this recommendation, he sent a copy of the will of his father, and she was duly appointed and qualified. The admitted correspondence between Glen T. Medler and Elizabeth K. Lewis reveals that Medler made several inquiries as to how he could pay a portion or all of the indebtedness and avoid a sale of the land to pay the debts and costs against the estate, expressly stating in his letters that due to potential existence of oil under the surface, the heirs, and he, particularly, did not want the land sold. Appellee Medler wrote appellant Lewis offering, if she would advise him of the amount necessary to pay all debts and costs, to send her a certified check for the amount. This, of course, would have rendered sale of the lands unnecessary. This appellant Lewis did not see fit to do. She did not, at any time, advise him the amount of the deficiency of personal property to pay the debts and costs of administration. He and his mother and sister refused to sign an entry of appearance waiving notice of the filing of the petition to sell real estate to pay debts. Service was had by publication. No notice, other than a published notice, was given him of the date of sale or the amount necessary to be realized to pay the claims and costs.

While legal notice was all the law required, good faith arising out of their relationship in this case required more.

The report necessary to file, before filing petition for an order to sell real estate to pay debts, showed a deficiency of ·$732.34. The petition stated that the real estate consisted of an eighty-acre tract. The order of sale directs the administratrix to sell the real estate or so much thereof as may be necessary to pay the debts now due from said estate and the costs now due and to accrue. The report of sale shows that all of the real estate was sold.

The appellants say that appellees accepted their distributive shares and are now estopped to question the validity of the sale. The record shows that appellees were all laymen, ignorant of the law, and, with the exception of two or three, were nonresidents of this State. There is no evidence tending to show that they knew how this transaction was handled until a few months before this suit was filed. They can scarcely be said to be estopped in such a case by accepting the dividends arising from the sale.

Appellants insist that appellees' claim is stale and barred by *laches*. As a general rule, actions concerning title to real estate are not barred by mere delay for a period short of that fixed by the Statute of Limitations. Only when the rights of innocent third persons or other facts render it inequitable to permit the asserting of title, will *laches* bar the right within the statutory period of limitation. (*Hagerman* v. *Schulte,* 349 Ill. 11; *DeProft* v. *Heydecker,* 297 Ill. 541; *Schultz* v. *O'Hearn,* 319 Ill. 244.) This record affords much evidence of a fraud committed against plaintiffs, not only by selling more land than the administratrix had jurisdiction to sell, but also by the manner of the purchase and later transfer to appellant. The decree provides, by accounting, that no injustice be done. Considering the undisputed evidence that appellant Lewis

was apprised of the desire of at least one of the appellees that the land not be sold, together with the fact that she is not penalized by the decree, which provides that she be reimbursed for all she invested in the land, we believe that the chancellor has equitably settled the rights of· all the parties.

The contention that the trial court erred in admission of improper evidence cannot be sustained. The evidence objected to was admitted subject to objection and, the trial having been before the chancellor, he is presumed to have considered only competent evidence. The record contains ample competent evidence to support the findings and decree of the chancellor, and the decree is affirmed.

*Decree affirmed.*