**People of the State of Illinois, Plaintiff-Appellee, v. Charles Huguley, Defendant-Appellant.**

**Gen. No. 50,512.**

First District, Fourth Division.

November 18, 1966.

Gerald W. Getty, Public Defender of Cook County, of Chicago (Marshall A. Patner, Frederick F. Cohn and James J. Doherty, Assistant Public Defenders, of counsel), for appellant.

Daniel P. Ward, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and E. James Gildea, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE McCORMICK delivered the opinion of the court.

CHARGE: Attempted rape.*

DEFENSE AT TRIAL: Defendant denied that he committed the alleged offense.

JUDGMENT: After a bench trial the court found defendant guilty and imposed a penalty of three to five years in the Illinois State Penitentiary.

POINTS RAISED ON APPEAL: The sentence should be reduced on a lesser included offense because the only evidence on the offense charged in the indictment was inadmissible.

EVIDENCE: **Testimony of State witnesses.**

Louise Harris testified that on December 16, 1964, she was walking home from work at about 11:20 p. m., going west on Fulton Street, when she noticed the defendant, Charles Huguley, walking behind her, going in the same direction; that as he walked by her he grabbed her, put his hand over her mouth, and said, "You're going with me." She stated that he then dragged her into a driveway; that she broke away from him twice and started

---

* Ill Rev Stats 1963, ch 38, § 8–4. Attempt.

(a) Elements of the Offense.

A person commits an attempt when, with intent to commit a specific offense, he does any act which constitutes a substantial step toward the commission of that offense.

Ill Rev Stats 1963, ch 38, § 11–1. Rape.

(a) A male person of the age of 14 years and upwards who has sexual intercourse with a female, not his wife, by force and against her will, commits rape. . . .

to run, but he grabbed her and hit her each time; that he continued to drag her towards the alley and she fought back, screaming; that he said "Shut up. I'm going to stick you with this knife"; that she did not see the knife. She stated that the defendant hit her on the side of the head, pushed her up against a building; that she struggled with him and he hit her again and they fell to the ground; that he told her to take off the long-line panty girdle she was wearing; that she told him she couldn't take it off lying down, so he let her up, at which time she started running towards the alley, screaming, and he caught her and they again fell on the ground. She stated that about that time they saw a man coming across the driveway with a stick in his hand; that she ran towards him and asked for his help. She further testified that the defendant had crawled away when the man came towards them, and when the complaining witness told the man the direction in which the defendant had gone he started after him, but the defendant managed to get away. The man who came to the witness' aid was Jesse Baxter; he called the police after the defendant got away.

The complaining witness described to the police the defendant and the clothing he was wearing; the police then searched the neighborhood and discovered the defendant and placed him under arrest. That same evening the defendant was identified by both the complaining witness and Baxter in a lineup in the police station.

Jesse Baxter testified that on the evening in question he was sitting in his car when he saw the complaining witness walking on Fulton Street; he saw the defendant coming in the same direction, and he recognized the defendant because he had seen him a week before "following my sister-in-law the night she was attacked—" He described the defendant and the clothing he was wearing. He further testified that he, Baxter, got out of his car to see if the defendant was going to bother the complain-

ing witness; that he saw the defendant grab her and pull her into the driveway and across the alley; that he ran across the street to the store of a friend and told them to call the police, then ran after the defendant, picking up a stick on the way. He stated that at first he could not see the defendant and the complaining witness, then saw them fighting; that the complaining witness ran toward him and grabbed his coat, at which time the defendant got away, although Baxter tried to cut him off. He further testified that he identified the defendant in a lineup.

Ronald Mainellis, a police officer, also testified that after receiving a call he went to Fulton and Kedzie where he met and talked with the complaining witness and Baxter; that Baxter went with him to search the neighborhood, and they came across the defendant wearing the clothes as described, and the officer placed the defendant under arrest.

**Testimony of defendant.**

The defendant testified that he was arrested about two doors from his home; that he was taken to the police station where he denied to the police that he had attempted to rape the complaining witness; that after work on the night of December 16 he went to a skating rink with two friends, then to a restaurant, and later to a house where Clarence Williams and his sister, Ora Lee Williams lived, and stayed there until about 11:25 or 11:30, when he started home and was arrested. Ora Lee Williams testified that she had seen the defendant at her home, and that he left at about 11:15.

OPINION:

The point made by the defendant that the evidence was not sufficient to convict him of attempted rape is based on the following development during the trial. The complaining witness had testified that when the defendant had her lying on the ground he let her up and she ran;

the defendant caught her and again they fell to the ground. While the complaining witness was testifying the following occurred:

The Court: Let's get down to the gist of it. Did he assault you sexually?

The Witness: No, because he couldn't get my garment but he would have, he was trying—

Mr. McDonnell: Object, Your Honor, she said "No."

Mr. Larrey: Would you—

The Court: You mean he couldn't, he didn't. Is that what you're saying, he did not?

The Witness: No, he did not.

The Court: That is all right.

On cross-examination the complaining witness testified that after the defendant had been arrested the police told her he had a man in custody and asked her if she could identify the man *who had attempted to rape her,* and she said yes.

After the State had finished its case the court made the following statement:

". . . The young lady who was assaulted, I asked particularly whether or not, that is Louise Harris, whether or not this man wanted to commit an act of sexual intercourse and she said no, he couldn't."

He asked the State's Attorney to clarify the matter. The State's Attorney then said the complainant had stated in her testimony that she had on a long-line panty girdle which the defendant told her to take off; that the fact that defendant referred to a panty girdle and told her to take it off indicated that he was attempting to rape her. The court then indicated that it wanted more evidence and gave the State the right to recall the complainant. In response to leading questions the complaining witness testified that the defendant had attempted

94

to rape her. These questions were all asked over the objections of the defendant. In this court the defendant argues that the only evidence going to the necessary element of the intent to commit rape was that brought out by the aforementioned leading questions. However, the defendant does not take into account the fact that the testimony of the complaining witness before her recall was sufficient to prove the intent of the defendant to commit rape. At the time the complaining witness was recalled to the stand the court had apparently misunderstood her previous response to the question, "Did he assault you sexually?" She answered, "No, because he couldn't get my garment but he would have, he was trying—"

 Also, it must be considered that this case was tried by a court without a jury. In McCormick on Evidence, Trials Without a Jury, § 60, at page 137, it is stated that the courts have generally said that the same strictness in applying the rules of evidence will not be observed in judge-trials as in trials before a jury, and further:

> "The most important influence in encouraging in trial judges this attitude toward evidence rules in non-jury cases is a rule of presumption obtaining in most appellate courts. These courts have said that in reviewing a case tried without a jury the admission of incompetent evidence over objection will not ordinarily be a ground of reversal if there was competent evidence received sufficient to support the findings, since the judge will be presumed to have disregarded the inadmissible and relied on the competent evidence."

The same rule is laid down in 5 CJS, Appeal and Error, § 1564(5) where numerous Illinois cases are cited. The Illinois courts have followed the rule above stated in trials before a judge without a jury. People v. Egan,

241 Ill App 189. In Brady v. Paine, 391 Ill 596, 63 NE2d 721, the court said: "Disregarding entirely the evidence objected to as incompetent, we think there is ample evidence in the record to sustain the decree." To the same effect are McCleary v. Lewis, 397 Ill 76, 72 NE2d 862; People ex rel. Hartshorn v. Hartshorn, 21 Ill App2d 91, 157 NE2d 563. Even in jury cases the Supreme Court has taken a similar position. In People v. Baker, 365 Ill 328, 6 NE2d 665, which was a trial before a jury, the trial court, over objection, permitted certain questions to be asked. The Supreme Court held that the questions were improper and the objection to them should have been sustained. However, the court said, "We are unable to see how any other verdict than that returned could have been the verdict of the jury had the objection to these questions been sustained." In People v. DeFelice, 376 Ill 312, 33 NE2d 475, a trial by court and jury, the court held that while the objection to certain questions should have been sustained, in view of the strong evidence of guilt the error did not warrant a reversal. In 2 ILP, Appeal and Error, § 633, it is said that a reviewing court will affirm the judgment of the trial court if in its opinion the judgment was justified in the law for any reason or ground appearing in the record. Also see Harrison v. Kamp, 395 Ill 11, 69 NE2d 261.

We find no reversible error in the record. The defendant was proved guilty beyond a reasonable doubt of the offense charged. The judgment of the Criminal Division of the Circuit Court is affirmed.

Affirmed.

DRUCKER, P. J. and ENGLISH, J., concur.