THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JACK NAHAS, Defendant-Appellant.

(No. 72-70; )

Third District—January 29, 1973.

572

Jack A. Brunnenmeyer, of Peoria, for appellant.

Thomas M. Pennell, Assistant State's Attorney, of Peoria, for the People.

Mr. JUSTICE DIXON delivered the opinion of the court:

This is an appeal from a judgment of the Circuit Court of Peoria County. The defendant, Jack Nahas, was indicted for bribery, found guilty by a jury and sentenced by the Court to a term of not less than one year nor more than five years and fined $5000.

The first contention of defendant is that as a matter of law the defense of entrapment was established.

At about 9:30 A.M., March 17, 1970 the defendant and Sgt. Donald Story of the Peoria Police Department were present on the fourth floor of the Peoria County Court House. They exchanged greetings. The officer could not recall who spoke first. Defendant testified that the officer spoke first. At any rate after the initial "Hi", the officer testified,

> "Mr. Nahas mentioned that he heard I was in charge of vice. I told him I was. He said he was in a position to do me some good.

I told him I suppose I was. He made a statement that one hand takes care of the other and he would like to talk to me. I told him I would be happy to talk to him and he told me to call and ask for him personally and we would meet somewhere and I told him I would."

There was no further conversation at that time with defendant.

Sgt. Story, the same morning, informed the then Chief of Police (the same *Allen Andrews* who very much appears later) and the State's Attorney's office of his conversation. Richard Capitelli, First Assistant State's Attorney requested that electronics be used to record any future conversation between Story and the defendant. On March 23, 1970 Donald Story telephoned defendant and set up a meeting with defendant for that evening.

Sgt. Story had engaged the assistance of Sgt. James Wilson of the Peoria Police Dept. and Corporal Robert Webb of the Illinois State Police to assist him with the electronics. Corporal Webb equipped Sgt. Story with a mobile microphone and transmitter, secreted on his person on the evening of March 23, 1970. Corporal Webb placed a radio receiver in his car and was able to hear the conversation between Sgt. Story and the defendant during their meeting that night at MacArthur and Washington St. Sgt. Wilson was with Webb and Wilson recorded the conversation on a tape recording machine.

Sgt. Story testified that during this conversation the defendant gave him a $50 bill "just to bind our deal". The deal was that Sgt. Story in return for this money, and future payments to be made at regular intervals, was to decrease law enforcement activities with regard to three houses of prostitution and was to notify defendant at least 20 minutes in advance of any impending police raids on those houses.

Sgt. Wilson and Corporal Webb testified to substantially the same facts. The tape was played, first, outside the presence of the jury and second, for the jury, with certain deletions ordered by the court.

The defendant took the stand and presented the only evidence offered on his behalf. He testified that on March 17, 1970 at total stranger came up to him and said "Hi, I'm Don Story head of the Vice Squad. Maybe you can help me make some money. Maybe you can open a gambling joint and I can make some money." He further testified that he did not know what Story was talking about and he did not ask for clarification. He was later telephoned twice and that he did meet Sgt. Story on March 23, 1970 at MacArthur and Washington. "On March 17, I did not offer Sgt. Story a bribe."

■■ A defendant who invokes the defense of entrapment must be con-

sidered to have admitted the commission of the acts involved in the offense charged. (*People v. Washington,* 81 Ill.App.2d 162, *cert.* denied 88 S.Ct. 1190.) The issue of entrapment is a jury question to be decided by the jury under proper instruction and the jury's decision will not be reversed unless there is entrapment as a matter of law which will be established only if improper inducement comes from the State's own witness and there is insufficient evidence of predisposition.

Was Nahas a man otherwise innocent who would not have committed a crime but for official solicitation, or was he predisposed to pursue a criminal design which he had already conceived? Did he initiate the transaction by suggesting payment of a bribe to a law enforcement officer who thereafter pretended to co-operate by furnishing an opportunity to the accused in order to facilitate the completion of the offense for the purpose of obtaining necessary evidence? The record clearly shows that the idea of committing the offense originated with Nahas. Ill. Stat. Ann. Chap. 38, Sec. 7—12 Committee Comments; 14A I.L.P. Sec. 49; Annotation 69 A.L.R.2d 1390.

The defendant during the course of the trial raised objections to the evidence pertaining to the use of the electronic devices. We will discuss the points raised in the order raised in the briefs.

In *People v. Kurth* (1966), 34 Ill.2d 387, the Supreme Court construed Article 14 of the Criminal Code of 1961 as it then read and held that "any party who has not consented to the recording or transmission of his conversation may bar its admission in evidence against him."

Sec. 14—12 was therefore amended, eff. Aug. 28, 1969 and now provides:

> A person commits eavesdropping when he:
>
> "(a) Uses an eavesdropping device to hear or record all or any part of any conversation *unless he does so with the consent of any one party to such conversation and at the request of a State's Attorney;* or
>
> (b) Uses or divulges, except in a criminal proceeding; any information which he knows or reasonably should know was obtained through the use of an eavesdropping device." (Emphasis supplied.)

The action taken here was at the request of the First Assistant State's Attorney. (There was testimony that the State's Attorney was in Texas that week attending a conference.) Does the term, "a State's Attorney" as used in Sec. 14—2(a) include Assistant State's Attorneys or is it limited to the number one himself?

■■ An Assistant State's Attorney is generally clothed with all the powers and privileges of the State's Attorney; and all acts done by him

in that capacity must be regarded as if done by the State's Attorney himself. 27 C.J.S. District and Pros. Attys. Sec. 30(1).

■■ In *People v. T., St. L. & W. R.R. Co.*, 267 Ill. 142 our Supreme Court concluded that Assistant State's Attorneys were "officers for the performance of the general duties of the offices of State's Attorney \* \* \*". We believe that the legislative purpose in creating the office of Assistant State's Attorney (Sec. 18, ch. 53, Ill. Rev. Stat.), was to provide an official who should have full power to act in the case of the absence or sickness of the State's Attorney, or in the case of his being otherwise engaged in the discharge of the duties of office, in the same manner and to the same extent that the State's Attorney could act, and we also believe that the General Assembly in using the term, "a State's Attorney" did intend that an assistant could act. Compare *People v. White*, 24 Ill. App. 324, 80 A.L.R.2d 1060.

■■ The next point raised is that the use of the recording violates the Fourth Amendment of the United States Constitution as well as Sec. 6, Article I of the Illinois Constitution which now provides, "The people shall have the right to be secure \* \* \* against unreasonable searches, seizures, invasions of privacy or interceptions of communications by eavesdropping devices or other means \* \* \*."

The Constitutional Commentary to S.H.A. Const. Art. I, Sec. 6, states in part, "Section 6 grants the people the right to be free from interceptions of their communications by 'eavesdropping devices or other means.' The provision is intended to create a right to be free from unreasonable interference with communications \* \* \*."

At page 30, Vol. VI of the Record of Proceedings of the Sixth Illinois Constitutional Convention the committee report says,

"(2) The words 'interceptions of their communications by eavesdropping devices or other means' have been inserted in the first clause. This addition is intended to create a right in respect to interception of communications that is akin to the prohibition against 'unreasonable searches and seizures'. In its initial vote the Committee approved a provision that would have prohibited 'any interception of their communications by eavesdropping devices'. This absolute ban on eavesdropping would have prohibited interceptions made with the consent of one party, Ill. Rev. Stats., 1969, ch. 38, Sec. 14—2 ( e.g. wiretapping consented to because essential to the apprehension of certain types of criminals such as kidnappers). On further consideration the committee decided to withdraw this absolute ban in favor of a more flexible provision. The content of the prohibition against 'unreasonable \* \* \* interceptions' will have to be worked out by a process of case-by-case

adjudication, just as with the prohibition against unreasonable searches and seizures \* \* \*."

██ In construing ambiguous provisions of a Constitution, the courts will look to the intent of the framers as reflected in convention proceedings. See, e.g., *Hoffman v. Lenhausen,* 48 Ill.2d 323, 269 N.E.2d 465; 11 I.L.P. Constitutional Law, Sec. 25.

*People v. Wolfson,* 79 Ill.App.2d 309, was also decided before the present amendment to Sec. 14 of the Criminal Code and also involved statutory construction.

The American Bar Association Standards Relating to Electronic Surveillance (1971) page 124 says,

> "The use of electronic surveillance techniques by law enforcement officers for the overhearing or recording of wire or oral communications with the consent of one of the parties should be permitted.

Commentary.

> This standard reflects the prevailing law, see e.g. Lopez v. United States, 373 U.S. 427 (1963) (recording of oral conversation); \* \* \*. It recognizes the validity of the use of electronic surveillance techniques for overhearing or recording conversations with the consent of one party in the administration of justice. It does not suggest that their use for this purpose should be circumscribed by a warrant procedure or otherwise be similarly limited. We recognize that another rule might ultimately prevail. \* \* \* The standard, however, is specifically intended to disapprove the results reached in cases such as \* \* \* People v. Kurth \* \* \* which interpreted the Illinois Statute \* \* \*. We find the rationale behind the present rule compelling, and we feel it should be retained \* \* \*.
>
> a. Rationale.
>
> \* \* \* Ultimately, the standard thus rests on the proposition that the 'function of a trial is to seek out and determine the truth or falsity of the charges brought against the defendant.' Lopez v. United States, 373 U.S. 427, 440 (1963). \* \* \* Where the investigators as such are individually involved and their credibility will be a significant factor in the subsequent trial, \* \* \* every effort should be made to record the conversations through the best available means. \* \* \* Thus, *recording as such 'involves no eavesdropping whatever in any proper sense of that term'* Lopez v. United States. It should not be unthinkingly placed in the same category with wiretapping or bugging \* \* \*."

In *United States v. White,* 401 U.S. 745, 28 L.Ed. 453 decided April 5, 1971 the Supreme Court rejected the contentions that *Lopez* should be

overruled and refused to disturb the result reached in *On Lee v. United States*, 343 U.S. 747 (transmitter), the court said, "For constitutional purposes no different result is required if the agent instead of immediately reporting and transcribing his conversations with defendant, either (1) simultaneously records them with electronic equipment which he is carrying on his person, *Lopez v. United States, supra;* (2) or carries radio equipment which simultaneously transmits the conversations either to recording equipment located elsewhere or to other agents monitoring the transmitting frequency. *On Lee v. United States, supra.*"

 Defendant next contends that the tape recording was cumulative evidence and that its character was inherently inflammatory and prejudicial. He cites, *People v. Rhodes*, 71 Ill.App.2d 150, and *People v. Huguley*, 77 Ill.App.2d 90. In both the court affirmed the conviction and neither support his contentions. He further argues that the voices were never identified in court and thus the jury was unable to differentiate the voices. Both James Wilson and Robert Webb testified that they knew the defendant and had heard his voice before the date in question. They also had heard the voice of Sgt. Story before that date. They testified as to what was said by the defendant (before the tape was played). We believe there was sufficient identification of the voices. Cumulative evidence is additional evidence of the same kind bearing upon the same point and it is not error to receive cumulative evidence otherwise admissible. (Gard, Illinois Evidence Manual, Rule 511.) The defendant did employ commonly used vulgar and dirty words which were heard by the jury when the tape was played. He contends that the vulgarity did inflame the passions of the jury and did prejudice him. The presence of irrelevant, incompetent, immaterial, or *obscene* matter in a recording will not ordinarily bar it from evidence so long as the objectional portions are not prejudicial. (29 Am.Jur.2d Evidence Sec. 436; Annotation 58 A.L.R. 2d 1039, Sec. 8; 10 L.Ed.2d 1182.) Assuming but not conceding prejudice in the admission of the vulgar phrases, we do not believe the verdict was substantially swayed. The dirty words were so unimportant in comparison with the major facts of the case they could have had no influence upon the jury.

██ The defendant next argues an invasion of his rights under the Fifth Amendment citing *Miranda v. Arizona*, 384 U.S. 436, and *Sherman v. United States*, 356 U.S. 369. He contends that Sgt. Story should have "forewarned him of the consequences of his words." *Miranda* holds that the prosecution may not use in a criminal case statements stemming from *custodial interrogation* of the defendant (without the warnings) and in this respect the Supreme Court has defined "custodial interrogation" as questioning initiated by law enforcement officers *after a person has been*

*taken into custody* or otherwise deprived of his freedom of action in any significant way. 29 Am.Jur.2d Evidence Sec. 555.

*Sherman v. United States* held that as a matter of law the defense of entrapment was established and based that conclusion from the undisputed testimony of the prosecution's witnesses.

■■ Defendant argues that it was error for the Court to give People's Instruction 2, being I.P.I. Criminal No. 3.10 "An attorney has the right to interview a witness for the purpose of learning the testimony the witness will give". The instruction should not be given unless there has been cross-examination eliciting prior interviews. (Committee Note). The defense attorney raised the issue of the propriety of the State's Attorney interviewing witnesses before their testimony so the instruction was properly given.

■■ The court refused to give defendant's instruction No. 1 which contained the following, "Any evidence which was received for a limited purpose by you should not be considered by you for any other reason." The trial court correctly decided that there was no evidence admitted for a limited purpose. The fact that there were deletions of portions of the tape recording did not make the remainder admissible only for limited purposes. See 29 Am.Jur.2d, Evidence, Sec. 263.

■■ The court refused defendant's instruction No. 7 which is not from I.P.I. and is as follows, "A reasonable doubt may arise from evidence or lack of evidence". This was but another attempt to "paint the lily" and was properly excluded by the trial court. Reasonable doubt is a term which needs no elaboration. *People v. Malmenato*, 14 Ill.2d 52, 61.

■■ The court also refused to give the following form of verdict (not I.P.I.) tendered by the defense. "We, the Jury, find the defendant, Jack Nahas, not guilty by reason of entrapment." The jury was adequately instructed that the defendant could not be found guilty of bribery unless convinced that he had not been entrapped. (I.P.I. Criminal Nos. 21.08 and 25.04.) The jury was instructed that entrapment was a defense (I.P.I. Criminal No. 24.04), and were also given 26.02, the form of verdict suggested by I.P.I. Criminal which adequately and accurately covers the situation. Supreme Ct. Rule 451.

The defendant at the time of trial, was past 75 years of age. He was born June 23, 1896 and is now approaching 77 years. He contends that the fine as a penalty is sufficient. The trial court conducted a hearing in Aggravation and Mitigation as well as a Probation Hearing after ordering a probation investigation.

Attached to the Probation report were over two pages, single spaced, entitled Past Arrests and Convictions. After the court struck the objectionable matter there remained;

| Year | | | Offense | Disposition |
|------|---|---|---------|-------------|
| 1918 Michigan | | | Speeding | Fined $5.00 |
| 1919 | | | " | " $30.00 |
| 1921 | | | Drunk | Probation (1 yr.) |
| 1928 | | | Operating a motor vehicle with a siren | Fined $11.00 |
| 1928 | | | Speeding | " $11.00 |
| 1932 | | | Conspiracy to violate the Volstead Act | 18 months |
| 1949 (Florida) | | | Prostitution | 3 months in city jail + fine $250 |
| 1952 " | | | Prostitution | 3 months in city jail |
| 1954 | | | " | 1 year in city jail |
| 1940 Illinois | | | Assault and Battery | Fined $30.50 |
| 1943 " | | | C.C.W. (?) | Fined $35.50 |
| 1943 " | | | Assault and Battery | Fined $15.50 |
| 1945 " | | | Disorderly conduct | Fined $15.50 |
| 1958 " | Mar. 1, | | No liquor license | Fined $105.00 |
| 1958 " | " | 1, | No state liquor license | Fined $50.00 |
| 1958 " | " | 1, | Keeper Gambling House | Fined $105.00 |

The probation officer concluded "defendant was so confirmed in his criminal behavior as to create a menace to society if he is left at large in the community".

Attached to the report was a statement given by the former Chief of Police of Peoria, *Allen Andrews,* (Sgt. Story's superior at the time of the offense), "in his *opinion* Mr. Nahas has been a persistent offender with no idea of what the law is. Mr. Nahas is the epitome of an organized crime personality who is incapable of reforming. He has been linked to organized Inter City Crime. If Mr. Nahas is allowed to get by it will serve as a public repudiation of Police efforts." (Ordered stricken.)

Also attached to the report was, "A local law enforcement agent who has been working with the vice squad for a considerable number of years states that to his knowledge Mr. Nahas has been connected with illegal prostitution and gambling activities for the full time he has been on the force". (Ordered stricken.)

The acting Chief of Police of Peoria submitted, "The following is the opinion of the Peoria Police Department on the probation request of John Nahas. It is the feeling of this Department that John Nahas is not a fit subject for probation. In the past 25 years he gained the reputation with this department as a man who has considered himself above the

law. Until this conviction he had in fact beaten the system". (Ordered stricken.)

There were letters attached signed by 15 business men recommending probation. There were also letters from two medical doctors stating that the defendant has probably had a coronary within the past ten years, that there was much evidence of ventricular muscle damage. The electrocardiagram shows auricular fibrilation. He is still taking Digitalis. He suffers vertigo due to eustachian salpingitis. He has a right bundle branch block and left heart enlargement with SST changes.

At the hearing on March 3, 1972 the following took place:

1. The court did not receive any evidence as to arrests which did not result in convictions.
2. *Defense counsel objected to the statements of the former chief and the acting chief and the court sustained the objection.*
3. Defense counsel objected to the statement of the unnamed member of the vice squad and the court sustained the objection.
4. The court stated that he would not consider the objectionable matter which he ordered stricken.
5. The court denied probation, proceeded on to aggravation and mitigation (at which the defendant agreed that the probation evidence could be used and the people offered nothing not contained in the probation report). Sentence was immediately pronounced, mittimus ordered instantly, and defendant remanded to custody of Sheriff for instant transmittal to Department of Corrections.

Defendant had been out of jail on bail of $1500, ($150 deposit) from the date of his arrest yet the court instantly denied bond and denied a stay of mittimus. After reflection the court rescinded the earlier order and stayed the mittimus so that the question of bail could be presented to this court.

At the hearing on mitigation the defense counsel made a statement which was accepted as evidence by the court. He said in part, "I would be a very naive child in a court of law, if I didn't recognize that your Honor undoubtedly viewed the television program where *Chief Allen Andrews* talked about indictments returned against 11 gamblers. One of these indictments is against Mr. Nahas and this court knows it. I have to speak of it, because I want to be very clear and concise in my statements about the effect this may have upon this Court, * * *. *Allen Andrews,* had the gall, despite Judge Charles W. Iben's order suppressing the indictments, he had the gall to enter into a press conference concerning these indictments * * * and in that interview he talked about breaking up one of the big syndicated gambling operations in downstate

Illinois". (The defendant was never in fact charged with syndicated gambling.)

■■■■ It is axiomatic that the trial court should use care in determining the accuracy of any information which comes before him, (*People v. O'Neill*, 18 Ill.App. 461), and should shield his mind from what might be the prejudicial effect of unreliable and other improper evidence. (*People v. Crews*, 38 Ill.2d 331.) It is clear that the probation officer was swayed by the adverse matter stricken by the trial court. Although the trial judge was proper in his evidentiary rulings we believe that he was subconsciously influenced by matters such as the television broadcast. A case where original bail was but $1500 suddenly became blown out of all proportions. We believe that the $5000 fine was sufficient punishment in this case. We are of the opinion that the case at bar is an appropriate one for the exercise of our power found in Supreme Court Rule 615(b)(4). We believe the sentence and the fine is greatly at variance with the purpose and spirit of the law. Accordingly, we reduce defendant's sentence to the fine of $5000 only. In all other respects the judgment is affirmed.

Judgment modified and affirmed as modified.

STOUDER, P. J., and SCOTT, J., concur.