THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ALAN D. ROBINSON, Defendant-Appellant.

Third District    No. 81-85

Opinion filed February 26, 1982.

Robert Agostinelli and Thomas Lilien, both of State Appellate Defender's Office, of Ottawa, for appellant.

Carl E. Hawkinson, State's Attorney, of Galesburg (John X. Breslin and Rita K. Mertel, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE BARRY delivered the opinion of the court:

Defendant Alan D. Robinson was charged, tried before a jury and convicted on a charge of delivery of cocaine in excess of 30 grams, and was sentenced to 20 years imprisonment. Ronald Guerrero had been arrested on November 6, 1979, for selling one-half gram of cocaine, and he offered to assist the police in setting up a drug buy with his dealer in return for leniency. The delivery was made by Robinson on November 13, 1979, to Guerrero in his home in Galesburg, Illinois, and was filmed on video tape by a camera previously installed by the police with Guerrero's consent. The camera was placed upon a living room shelf pointing towards the kitchen. The film showed defendant primarily in profile, giving Guerrero a bag in exchange for money. The price was $1,950 per ounce. During the transaction, defendant stated that he might be able to get some more, and on December 5, 1979, pursuant to a court order, the police installed a wiretap on a hotel telephone in Galesburg from which Guerrero called defendant three times to try to arrange a deal. The transaction was never completed. Defendant was charged on January 8, 1980, but he was not arrested until June of 1980. He has appealed from his conviction and sentence, asserting that it was error (1) to exclude his alibi evidence; (2) to admit a tape recording of a December 5 conversation concerning another possible transaction; (3) to permit in-court identification of defendant by two agents who had monitored the video transaction; (4) to display and admit into evidence profile photographs of defendant; (5) to admit two instances of hearsay evidence; (6) to allow several instances of prosecutorial misconduct during closing arguments; (7) for the legislature to classify cocaine as a Class X felony; and (8) to impose a 20-year sentence.

Defendant's first assertion of error is the exclusion of his alibi

defense. Defendant had been ordered to file his answer to the State's pretrial discovery by August 5, 1980, but he filed nothing until 4 p.m. on Friday, October 3, when he submitted a discovery answer indicating that he would present an alibi defense with evidence that he was in Peoria at the time of the offense and that his witness would be John Stringer. Prior to trial commencing on October 6, defense counsel explained that he had just learned Stringer's name on October 2, and that defendant had been in a different town, Creve Coeur, the night of the crime, not in Peoria as previously stated. Defense counsel stated that Stringer was then in the courthouse and available to the State for interviewing. The trial court granted the State's motion in limine to exclude the alibi defense on the ground that it was not timely and that the State would not have time to investigate the asserted alibi. The trial began on October 6, but was recessed for one week when defendant was injured in an automobile accident on the morning of Tuesday, October 7.

Late on Friday, October 10, defense counsel filed a motion to reinstate the alibi defense and listed a second witness. The court again denied the motion as not being timely, and trial resumed on Tuesday, October 14. Monday, October 13, was a holiday. During the trial, defendant took the stand in his own behalf. The court ruled that he could not say where he was on the night of the crime; he could only testify that he was not at Guerrero's house. On appeal defendant argues that it was error to exclude his alibi evidence, both on October 6 and again on October 10, and that it was also error to prevent him from testifying to his alibi at trial.

The trial court's authority to exclude evidence is based upon Supreme Court Rule 415(g) (Ill. Rev. Stat. 1979, ch. 110A, par. 415(g)(i)), which provides that if it is brought to the attention of the trial court that a party has failed to comply with a discovery rule, the court may, among other sanctions, exclude such evidence. The Illinois Supreme Court held in *People ex rel. Carey v. Strayhorn* (1975), 61 Ill. 2d 85, 329 N.E.2d 194, that the Supreme Court Rules for discovery in criminal cases, including Rule 415, apply to the defense of alibi. Whether alibi evidence should be excluded in a particular case is, of course, a matter for the discretion of the trial judge who must weigh all applicable factors in order to reach a just result. Some cases have decided that it was error, in the circumstances there present, to exclude alibi witnesses if the witnesses were disclosed in time for the prosecution to interview them before they testified. (*E.g.,* *People v. Mahdi* (1980), 89 Ill. App. 3d 947, 412 N.E.2d 669.) However, there are other cases which have held that exclusion of alibi witnesses was an appropriate sanction, justified by the facts and circumstances of those cases. In *People v. Short* (1978), 60 Ill. App. 3d 640, 377 N.E.2d 389, where the State was not advised of the alibi defense until trial was in progress,

this court noted that the State needed time and opportunity to investigate the alibi defense, and then held that the trial judge did not abuse his discretion in excluding the evidence regarding the alibi defense. In a more recent decision, the reviewing court observed that the defendant waited until the day of trial, which was the 117th day of his term, to notify the State of his alibi defense. (*People v. Braxton* (1980), 81 Ill. App. 3d 808, 401 N.E.2d 1062.) The court said, "The sudden discovery of the alibi and production of his wife as an alibi witness at this late date suggests recent fabrication * * *." (81 Ill. App. 3d 808, 815, 401 N.E.2d 1062, 1067.) In *Braxton* there was nothing to show that the defendant could not have produced his alibi witness at an earlier date.

■■ In the case at bar, defendant has asserted that on the night of November 13, 1979, he had looked at a car that was for sale on the street of Creve Coeur and had talked to someone whose name he did not know at the house where the car was parked. Hence, it took some time to locate the alibi witness. Defendant also argues that the State had ample time to investigate his alibi defense during the week the trial was recessed. However, no alibi proposal was pending, since that period of time came after the court had ruled to exclude the evidence. Defendant does not explain why he did not renew his motion for an alibi defense immediately after the trial was recessed; the record reveals only that he waited until late in the day on Friday before trial was to begin again. The trial court noted that defendant knew where he had been all along, and there was no excuse for not giving notice of his intention to assert an alibi even before he had located the witnesses. We cannot say that the trial court erred in excluding the witnesses. While the circumstances surrounding disclosure of witnesses make this a close case for the relatively drastic sanction of exclusion, the other evidence, showing clearly that defendant was present in Galesburg on the night in question, makes it unlikely that this ruling would have been prejudicial, even if it was error. We think no error occurred.

Defendant also asserts that, even if the exclusion of his witnesses was not error, it nonetheless was error to prevent him from testifying in his own behalf to his whereabouts the night of the crime. Defendant notes that there are no Illinois cases on this point, and he argues that the better view has been adopted in those jurisdictions that have permitted the defendant to testify to his own alibi even though the alibi notice statute was not complied with. For example, in *People v. Rakiec* (1942), 289 N.Y. 306, 45 N.E.2d 812, it was held that the alibi statute applies only to witnesses other than defendant because the purpose of the statute is to enable the prosecution to learn something about the witnesses whom the defendant intends to call. The court reasoned that it was necessary as to the defendant himself since he is always fingerprinted and investigated

before trial anyway. *Rakiec* has been followed in other States, including Iowa. (*State v. Lanphear* (1974), 220 N.W.2d 618), South Dakota (*State v. Hibbard* (1978), 273 N.W.2d 172), and Michigan (*People v. Merritt* (1976), 396 Mich. 67, 238 N.W.2d 31). In *Merritt*, the court noted that the purpose of the notice of alibi statute is to facilitate orderly, uninterrupted trials by providing advance notice of witnesses to be investigated, and that where the defendant fails to give early notice of an alibi, his own credibility will be so severely weakened in the eyes of the jury as to offset any disadvantage to the State from the surprise.

Other States have reached a different result. In an Indiana case, *Hartman v. State* (Ind. App. 1978), 376 N.E.2d 100, the court noted that earlier decisions had held that "the notice statute served the truth-finding process by protecting the state from easily fabricated 'eleventh hour' defenses, and by enabling the state to make adequate trial preparation * * * when such statutes place reciprocal burdens of disclosure upon the state, they are not violative of the defendant's due process rights * * *." (376 N.E.2d 100, 105.) New Jersey, Wisconsin, and Kansas all recognize that defendant's own alibi testimony is subject to exclusion to the same extent as the testimony of other alibi witnesses. See *State v. Francis* (1974), 128 N.J. Super. 346, 320 A.2d 173, and cases cited therein.

■■ We find the reasoning in *Hartman* to be persuasive. If defendant had a *bona fide* alibi, he could have given the State timely notice of his intention to assert such an alibi by his own testimony, at least, even before he located corroborating witnesses. There is no suggestion here that defendant had any reason for not knowing where he was the night of the crime. We therefore hold that the trial court did not err in ruling that defendant could not testify as to his location the night of the crime and was limited to denying that he was at Guerrero's house.

■■ Defendant also argues that the error of excluding his alibi testimony was aggravated by the prosecutor's closing argument where, after stating that defendant said he wasn't at Mr. Guerrero's house, the prosecutor went on, "Does he say anything else?" Defendant asserts that this was unfair comment upon his failure to say where he was, when in fact the court had limited his testimony to a statement that he was not at Guerrero's house. We are inclined to agree that it was error for the prosecutor to comment upon the exclusion of evidence, but given the strong evidence that defendant was in fact at Guerrero's house, we do not believe the improper comment amounted to prejudical error.

Defendant next contends that the court erred when it admitted into evidence the tape of a telephone conversation occurring on December 5, 1979, between Guerrero and defendant which was represented as being a discussion of another possible drug deal. Defendant says this tape was evidence of other crimes and as such, was not admissible since it did not

qualify under any of the exceptions permitting such evidence to be used. The State points out that the conversation on the tape does not in fact contain evidence of any other crime since the discussion did not result in a deal being consummated.

Defendant also says that Guerrero's identification of him as the person talking was so weak that use of the tape was not justified. We observe at this point that we have listened to the conversation and note that the person answering the call is identified as "Al" and answers to that name. During the conversation it is apparent that Guerrero is trying to arrange a transaction for that night while "Al" wants to wait 24 hours and tells Guerrero that he must wait his turn. There is reference to "last time" and a discussion of whether the product is "rock" and whether it is as "good as the last." From these remarks, we think it clear that both parties are making reference to a previous cocaine transaction which Guerrero identifies as the deal for which defendant is on trial.

■■ In view of the fact that defendant's name is Alan, and in view of Guerrero's positive identification of defendant's voice (which was corroborated by a police officer who also recognized the voice as that of defendant), we conclude that the evidence of identification was sufficient for purposes of relevancy.

Whether the tape amounts to an admission that defendant committed the crime for which he is charged is a question for the jury to determine. We believe that the trial court did not abuse its discretion in admitting the conversation for the purpose of showing defendant's method of dealing, his guilty knowledge of cocaine sales, and to show his participation in the earlier transaction.

Defendant next contends that it was error to permit an in-court identification of defendant by the two special police agents who had watched the transaction on the video monitor set up in Guerrero's garage on the night of November 13. The video monitor permitted the special agents to see on a television screen the same picture that was being recorded on the video tape. Defendant argues that the agents lacked personal knowledge upon which to base their identification of defendant because they had never seen him in person, and that an identification based upon the video monitor was at best an opinion or conclusion of the witness. Defendant also attacks the agents' identification on the ground that it was an improper bolstering of Guerrero's identification of defendant.

We believe these contentions are without merit. In the first place, it is not error for the trial court to receive cumulative evidence that would otherwise be admissible. (*People v. Nahas* (1973), 9 Ill. App. 3d 570, 292 N.E.2d 466.) Hence, there is nothing intrinsically wrong with evidence that bolsters or corroborates other evidence if it is material and relevant to the case.

■■ Secondly, the agents testified to what they observed upon the video monitor screen, and identified Guerrero and defendant as the two men they had observed. All identification testimony is to some extent conclusional in that the witness must conclude that the person previously seen has enough characteristics like the person in court to be that same person. The fact that these witnesses are basing their in-court identification upon the moving picture they observed on a video monitor does not make the identification inadmissible. We conclude that this testimony consisted of the witnesses' observations and was properly admitted into evidence. (*People v. Maxey* (1976), 37 Ill. App. 3d 905, 346 N.E.2d 51.) Furthermore, we agree with the State that even if it had been error, it would not be prejudicial because the jury was able to view the video tape for itself. According to the police agents, the video tape portrays exactly what they viewed upon the monitor. Thus the jury was aware of the basis of the agents' identification of defendant and could accept or reject the testimony based on their own view of the tape. Error, if any, was harmless.

■■ The next error assigned by defendant was the admission into evidence of three photographs of defendant taken about two months before trial that show a side view of his head and upper body. These photographs were displayed to the jury during the showing of the video tape so the jury could compare the profile photos with the profile views on the tape. Defendant argues that the photographs were not relevant, that they were used to bolster the identification of defendant, that they were not probative, and that the trial court abused its discretion to defendant's great prejudice. The photographs show defendant without a mustache, and the man identified as defendant on the video tape did have a mustache, but this type of superficial difference in appearance would not, in our opinion, render the photographs irrelevant. It is within the discretion of the trial court to determine the admissibility of photographs that would be of assistance to the jury in resolving factual issues. (*Cf. People v. Nicholls* (1969), 42 Ill. 2d 91, 245 N.E.2d 771.) Certainly the receipt of corroborative evidence is not error if the evidence is otherwise admissible. In addition, we note that defendant was present during the showing of the video tape and thus was available for an even more effective comparision with the person shown on the tape. Any potential prejudice to defendant was eliminated by virtue of his presence in person. We find no abuse of discretion in admitting the profile photographs into evidence.

■■ Next, defendant argues that two instances of hearsay testimony were improperly admitted into evidence. First, Agent Flanagan testified to a conversation with Guerrero which led to the arrangements being made for the November 13 transaction. During the conversation, according to Flanagan, Guerrero identified defendant as being ready to sell four ounces of cocaine for $1,950 per ounce. The trial court overruled

defendant's hearsay objection. The State claims that any error is waived because defendant did not include it in his post-trial motion. (*People v. Pickett* (1973), 54 Ill. 2d 280, 296 N.E.2d 856.) We agree, but even if the issue had not been waived, we would find no error because the out-of-court declarant, Guerrero, testified to the same conversation and was available for cross-examination. The hearsay rule does not apply in such a case. *People v. Gan* (1979), 75 Ill. App. 3d 72, 394 N.E.2d 611.

■■ Defendant also argues that it was impermissible hearsay when Flanagan testified that he located defendant's address in Bloomington, Illinois, by contacting the registrar's office at Illinois State University in Normal, Illinois, just prior to November 1979. This testimony came during redirect examination of the witness Flanagan after defendant had brought out on cross-examination that the telephone number Guerrero called on December 5 was registered to Larry Wenger on Arcadia Drive in Bloomington, Illinois. This evidence of defendant's November address was not admitted to prove where he was actually residing at that time but rather to show how a phone number was located. Defendant himself testified that he had lived in Bloomington in November. We see nothing erroneous in the receipt of Flanagan's testimony, and even if it was error, defendant waived this issue by failing to object either during trial or in his post-trial motion.

Defendant next contends that his conviction should be reversed because of several instances of prosecutorial misconduct which, if taken together, would amount to plain error of sufficient gravity to require a reversal. Stated briefly, defendant lists as improper conduct: (1) reference during closing argument to the absence of alibi testimony; (2) reference to evidence of other criminal conduct in the taped telephone conversation; (3) the emphasis of the agents' identification of defendant from the video monitor; (4) use of irrelevant profile photographs of defendant; (5) the replaying of the video tape during closing arguments with the action being stopped to focus attention of defendant's profile; (6) reference in closing argument to one of the jurors' experience with people who used drugs while in Viet Nam. Defendant insists that the cumulative effect of the prosecutor's misconduct is plain error.

As the State points out, defendant waived any error in the playing of the video tape during closing argument by failing to object, and similarly he waived the improper reference to the experience of one member of the jury by not objecting. The other instances of allegedly improper conduct have already been held not to have been erroneous, with the exception of the prosecutor's comment upon defendant's failure to testify where he was the night of the crime. In the context of the entire trial, we have concluded that the prosecutor's comment was not so prejudicial as to constitute reversible error.

■■ Defendant also claims to have been deprived of his constitutional right to a fair trial by the cumulative effect of the trial errors, particularly those errors which permitted the State to bolster Guerrero's identification of defendant. As indicated previously, the State is permitted to bolster its case with corroborative evidence to the extent such evidence is otherwise relevant and the possible prejudice of any unnecessary accumulation of repetitive testimony is a matter for the discretion of the trial court. We believe the State is to be commended for a well-prepared, carefully documented case. We frankly cannot imagine any reasonable person concluding that the defendant was unfairly prejudiced by the corroborative evidence offered here by the State. We suspect that the simple fact is that the truth hurts.

Defendant also argues that the classification of the crime of delivery of more than 30 grams of cocaine as a Class X felony (Ill. Rev. Stat. 1979, ch. 56½, par. 1401(a)) was unconstitutional because cocaine is a non-narcotic substance and should not be classified with the delivery of narcotic substances. While this appeal was pending, the Supreme Court of Illinois ruled the statute constitutional, holding that cocaine may be classified with narcotic substances for penalty purposes. (*People v. McCarty* (1981), 86 Ill. 2d 247, 127 N.E.2d 147.) This decision disposes of defendant's argument.

■■ Finally, defendant argues that the sentence of 20 years imposed by the court was excessive and that the trial court took an excessively harsh view of selling cocaine which is not a narcotic and which does not result in any serious harm. Without reciting all the factors defendant would have us consider, we think it sufficient to say that the penalty imposed by the trial court was well within the bounds of 6 to 30 years provided by statute, especially when we consider that defendant dealt in large quantities of cocaine, that he had a prior felony conviction, and that our legislature has determined that cocaine does present a serious threat to society.

For the reasons stated, we affirm the conviction and sentence.

Affirmed.

SCOTT, P. J., and ALLOY, J., concur.