THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JOSEPH NUNN, Defendant-Appellant.

First District (1st Division)   No. 1—96—4048

Opinion filed October 26, 1998.—Rehearing denied December 22, 1998.

M. Katherine Roller, of State Appellate Defender's Office, of Chicago, for appellant.

Richard A. Devine, State's Attorney, of Chicago (Renee Goldfarb, Janet Powers Doyle, and Jennifer Sharma, Assistant State's Attorneys, of counsel), for the People.

JUSTICE O'BRIEN delivered the opinion of the court:

Following a jury trial, defendant, Joseph Nunn, was convicted of attempted murder and aggravated battery. The trial court merged the aggravated battery conviction into the attempted murder conviction and sentenced defendant to 10 years' imprisonment. On appeal, defendant argues: (1) the trial court erred by granting the State's motion *in limine*; (2) the prosecutor improperly adduced evidence and made arguments to which defendant was prohibited from responding by the *in limine* ruling; (3) defense counsel provided ineffective assistance; and (4) the State failed to prove defendant guilty of attempted murder beyond a reasonable doubt. We affirm.

The victim, Michael James, was severely beaten on the morning of January 16, 1995. Defendant was later arrested in connection with the beating and gave the following written statement to Assistant State's Attorney Sharon Opryszek:

"[Defendant] states that on January 16, 1995, at about 2 a.m. he was at apartment 1107 with Arnetta Price, Pascha, Annie Price and their kids when Michael James came over. [Defendant] states that Michael James and Annie Price *** were arguing and Michael James was asked to leave the apartment by both [defendant] and Pascha.

[Defendant] states that Michael James left the apartment 1107. [Defendant] states that five minutes after Michael James left the apartment 1107, [defendant] left the apartment. [Defendant] states that he met up with Michael James down by the elevator at the first floor of the building at 4352 South State. [Defendant] states that he asked Michael James why he had been messing with Annie Price's daughter, Vernetta. [Defendant] states that he heard that Michael James had been sexually messing with Vernetta, who is only 13 years old. [Defendant] states that Michael James said he wasn't messing with Vernetta. [Defendant] states that he and Michael James started arguing and then Michael James admitted that he messed with Vernetta. [Defendant] got mad after Michael James admitted he messed with Vernetta and so [defendant] pushed Mi-

chael James backward and Michael James fell backward by the stair and grabbed on to the pole next to the stairs. [Defendant] states that he punched Michael James in the face four to five times. [Defendant] states that Uncle Billy told him to stop and let him go. [Defendant] states that Benny Nunn, also called Bingo, Daze, Na-Rolas, and a fat guy were there when [defendant] was fighting with Michael James. [Defendant] states that these guys asked him why [defendant] was fighting Michael James and he told Bingo, Daze, NaRolas and the fat guy that Michael James had supposedly raped Vernetta.

[Defendant] states that he then left and saw Daze hit Michael James. [Defendant] states that he left to go get cigarettes at the gas station at 43rd and State. [Defendant] states that he came back from the gas station a few minutes later and saw Michael James laying [*sic*] on the ground with blood coming out of his mouth, nose, and ears.

[Defendant] states that he went back to apartment 1107 and told Pascha about Michael James being hurt. [Defendant] states that [Annie Price] went downstairs to see about Michael James. [Defendant] states that the paramedics came and took Michael James to the hospital."

Prior to trial, the State made a motion *in limine* to: (1) preclude defendant from introducing Michael James' arrest based on a complaint of alleged criminal sexual abuse against Vernetta; (2) exclude any mention of the alleged criminal sexual abuse at trial; and (3) redact the portion of defendant's confession that mentions the alleged sexual abuse. The trial court granted the motion.

At trial, Twyla Charles, a Chicago Housing Authority police officer, testified that at approximately 2:30 a.m. on January 16, 1995, she observed an ambulance parked in front of a housing complex at 4352 South State Street. Charles walked inside and observed an African-American male, later identified as Michael James, lying facedown in the lobby. He was unconscious and bleeding from the head.

Michael James (hereafter, the victim) testified that in the late evening hours of January 15, 1995, he visited his girlfriend, Annie Price, at her sister's apartment at 4352 South State Street. Annie, defendant, and "Pashaw" were in the apartment when the victim arrived. The victim argued with Annie for about 10 to 15 minutes, then he left the apartment and started to walk downstairs.

The victim heard footsteps behind him on the stairwell. When the victim reached the first floor, defendant and "three or four" other men approached him. Defendant said "Let's kill this punk." One of the men held the victim from behind, while defendant punched him in

the jaw and hit him several times in the face with a 40-ounce beer bottle. The other men with defendant also hit the victim several times in the face. The next thing the victim remembers is waking up in the hospital.

Doctor John Barrett testified he assisted the victim after he was brought to Cook County Hospital on January 16, 1995. Doctor Barrett observed that the victim was "pretty badly injured," with evidence of blunt head trauma and a very depressed level of consciousness. Doctor Barrett conducted a CT scan which revealed that the victim had a "diffuse axonal injury," meaning he had a very severe head injury that had damaged his brain tissue.

Detective Armata testified that in late January 1995 he went to 4352 South State Street, where he spoke with defendant about the victim's beating. Defendant told Armata that he witnessed the victim arguing with Annie in her sister's apartment on January 16. However, defendant denied knowing how the victim sustained his injuries.

Armata testified that at approximately 12:45 a.m. on July 10, 1995, he spoke with defendant again, this time at police headquarters. During this conversation, defendant stated that he saw a group of men beat the victim in the lobby of Annie's apartment building on January 16.

Following defendant's statement, Armata called Assistant State's Attorney Opryszek, who arrived at approximately 2:30 a.m. and spoke with defendant. Armata was present during that conversation. Defendant repeated his story about seeing several men beating the victim, but added that he also saw a heavyset woman stomp the victim with her feet.

Detective Jones testified he spoke with defendant at police headquarters on July 11. Defendant told Jones that he witnessed the victim and Annie arguing in the apartment on January 16, after which the victim left the apartment and went downstairs. Defendant followed the victim down the stairs to the first floor and punched the victim four or five times in the face.

Detective Jones contacted Assistant State's Attorney Opryszek and informed her that defendant now admitted hitting the victim. Opryszek then spoke with defendant, who agreed to make a written statement. The written statement, set forth near the beginning of this opinion, was published to the jury; however, pursuant to the motion *in limine*, the portions of the statement regarding the victim's alleged sexual abuse of Vernetta were redacted.

Defendant's uncle, Billy Nunn, testified he was standing by a food and liquor store on January 16, when he saw defendant arguing and fighting with another man in front of an apartment building. Defen-

dant had nothing in his hands during the fight. Nunn walked over and "took [defendant] away from the fight." When he and defendant left, the man was still standing next to the building, apparently uninjured. Nunn and defendant walked to a store to get some cigarettes. When they returned to the apartment building, Nunn saw the man lying on the ground, bleeding. Nunn and defendant "just kept going about [their] business" and did not help the man or call the police.

The jury found defendant guilty of aggravated battery and attempted murder. The trial court merged the aggravated battery conviction into the attempted murder conviction and sentenced defendant to 10 years in prison. Defendant filed this timely appeal.

First, defendant argues the trial court erred by granting the State's motion *in limine* to prevent the defense from introducing any evidence of the victim's alleged sexual abuse of Vernetta. Defendant waived this argument by failing to raise it in his posttrial motion. *People v. Enoch*, 122 Ill. 2d 176, 186 (1988). Even choosing to address the issue on the merits, we find no error.

■ The State introduced defendant's written statement that he punched the victim; however, pursuant to the motion *in limine*, the portions of defendant's statement mentioning the reason he punched the victim, for sexually abusing 13-year-old Vernetta, were redacted. Defendant claims his *entire* statement should have been admitted pursuant to the "completeness doctrine," which provides that " 'if one party introduces part of an utterance or writing the opposing party may introduce the remainder or so much thereof as is required to place that part originally offered in proper context so that a correct and true meaning is conveyed to the jury.' " *People v. Williams*, 109 Ill. 2d 327, 334 (1985), quoting *Lawson v. G.D. Searle & Co.*, 64 Ill. 2d 543, 556 (1976).

The right to bring out all of a writing or conversation is not absolute, but depends on the relevancy of the additional parts of the writing or conversation the party wishes to introduce. *Williams*, 109 Ill. 2d at 335. Defendant contends that the redacted portion of his statement was relevant to show that defendant lacked the specific intent to kill the victim. We disagree. Although the redacted portion shows that defendant hit the victim after the victim admitted to sexually abusing a child, it gives absolutely no indication, one way or the other, whether defendant intended to kill the victim or leave him bruised, bloodied, but alive. Accordingly, *People v. Rivera*, 260 Ill. App. 3d 984 (1994), *People v. Quick*, 236 Ill. App. 3d 446 (1992), *People v. Upton*, 230 Ill. App. 3d 365 (1992), and *People v. Perez*, 209 Ill. App. 3d 457 (1991), cited by defendant for the proposition that state of mind evidence is relevant where intent is material to defendant's guilt, are

inapposite here, where the redacted portions of defendant's statement give no clue as to his state of mind at the time of the beating.

While the evidence defendant sought to admit provides an arguably understandable reason, at an emotional level, for the beating he administered to the victim, the evidence does not legally justify defendant's use of force. Article seven of the Criminal Code of 1961 (720 ILCS 5/7—1 *et seq.* (West 1996)) provides for the justifiable use of force under certain circumstances, such as when the force is in defense of self or defense of others. None of those circumstances apply to defendant's beating of the victim. Thus, since the evidence of the victim's sexual abuse of Vernetta provided no legal justification for defendant's conduct, said evidence was not relevant, and the "completeness doctrine" did not apply.

■ Defendant next argues that the trial court's granting of the State's motion *in limine* improperly precluded the defense from impeaching the victim's credibility. Specifically, defendant argues that the victim was allowed to portray himself as a good man who was concerned with his girlfriend's (Annie Price's) behavior rather than one who violently attacked her because she confronted him about his alleged sexual abuse of her daughter. The victim was also allowed to testify that he said nothing to defendant prior to the beating. Defendant contends that had the trial court not granted the motion *in limine*, the defense would have shown that the victim and Annie argued very violently over what the victim had supposedly done to Vernetta. The defense also would have shown that, just prior to the beating, the victim admitted to defendant that he had sexually abused Vernetta.

Impeachment is not allowed on collateral matters that are irrelevant to a material issue of the case. *Kinkaid v. Ames Department Stores, Inc.*, 283 Ill. App. 3d 555, 567 (1996). As discussed above, the victim's alleged sexual abuse of Vernetta was a collateral matter, not relevant to any material issue of the case, and therefore not a proper subject for impeachment.

■ Defendant also argues that the evidence of the victim's alleged sexual abuse of Vernetta was admissible to show his bias or motive for testifying against defendant. Specifically, defendant argues that the jury might have inferred from said evidence that the victim expected to avoid prosecution for the sexual abuse charge in exchange for his cooperation in the case against defendant.

The confrontation clause of the sixth amendment of the United States Constitution (U.S. Const., amend VI) guarantees defendant the right to cross-examine a witness against him to show the witness' bias, interest or motive to testify falsely. *People v. Harris*, 123 Ill. 2d 113, 144 (1988). However, the sixth amendment does not prevent the

trial judge from imposing limits on defense counsel's inquiry into the potential bias of a prosecution witness. *Harris*, 123 Ill. 2d at 144. The trial judge retains wide latitude to impose reasonable limits on such cross-examination based on concerns about confusion of the issues or interrogation that is of little relevance. *Harris*, 123 Ill. 2d at 144.

We find no abuse of discretion here. The sexual abuse charges against the victim were dropped prior to trial when the complainants refused to follow through with the complaint; thus, there was little, if any, motivation for the victim to testify falsely against defendant in order to curry favor with the State's Attorney's office. Cross-examination of the victim concerning the alleged abuse would have provided no information of any relevance to the material issue in the case, *i.e.*, whether defendant beat the victim with the specific intent to kill him. Accordingly, the trial court did not abuse its discretion in granting the motion *in limine* and preventing defendant from cross-examining the victim about the alleged sexual abuse.

■ Next, defendant contends that the State "abused" the order *in limine* by questioning the victim on direct examination about the fight he had with Annie Price. Defendant argues this was error because "the State was aware that there was another version of that fight but that it would not be introduced to impeach [the victim] due to the [order *in limine*]."

We find no error; defendant is rearguing the trial court's decision to grant the *in limine* motion. As discussed above, the trial court did not err in granting the motion.

■ Defendant argues that the State made comments during closing argument to which the defense could not respond due to the order *in limine*. Defendant failed to object to those comments when they were made and, thus, waived the issue for review. *Enoch*, 122 Ill. 2d at 186. Even choosing to address the issue on the merits, we find no error.

Defendant refers to the prosecutor's comment that defendant inflicted "senseless violence" on the victim "for no reason at all"; defendant contends said comment was reversible error because the *in limine* ruling prevented the defense from responding that defendant beat the victim for sexually abusing Vernetta.

In support, defendant cites *People v. Chavez*, 265 Ill. App. 3d 451, 457 (1994), which held that when a trial court determines evidence to be inadmissible, counsel may not refer to that evidence during closing argument. *Chavez* is inapposite, as the State here never referred to the inadmissible evidence concerning the victim's alleged sexual abuse of Vernetta. Defendant's argument is another effort to seek reversal based on the trial court's *in limine* ruling; as discussed above, that ruling was not in error.

■ Defendant also faults the prosecutor for stating of the defendant:

> "He's the only person who would know what to put in [his written statement], he read it, he can read *** it's his statement. He told you *** he beat him."

Defendant contends this comment incorrectly implied that the statement the jury heard was a complete version of the offense when, in fact, the statement was redacted of much of its original content. We disagree. The prosecutor was merely informing the jury that defendant wrote out a statement admitting that he beat the victim. The prosecutor's comment was an accurate reflection of the evidence and not error.

■ Defendant contends the State erred when it stated:

> "[C]ounsel raised questions about Annie Price, the girlfriend, well it's true the defendant doesn't have to prove anything, it's the [P]eople *** that have to prove this defendant guilty beyond a reasonable doubt. But ladies and gentlemen, the defense counsel has the power to subpoena as the State does, in fact there were people such as the State's Attorney or any other witness that counsel felt should be here to testify before you, he has the same power as the State."

Defendant contends this comment incorrectly implied that defendant failed to call Annie Price and other witnesses because their testimony would have been damaging to defendant. Defendant contends that the actual reason he failed to call Annie Price is because of the order *in limine*, which precluded him from inquiring about the victim's alleged sexual abuse of Price's daughter.

The State's comments were permissible here because they were made in response to defense counsel's own reference in his closing argument to the State's failure to call Annie Price as a witness. See *People v. Griffin*, 247 Ill. App. 3d 1, 8 (1993).

■ Next, defendant argues that his counsel provided ineffective assistance by failing to preserve for appellate review the issues concerning the motion *in limine* and prosecutorial misconduct. As discussed above, we have chosen to address the *in limine* and prosecutorial misconduct issues on the merits; therefore, defendant's ineffective assistance claim fails. See *People v. Pecoraro*, 144 Ill. 2d 1, 13 (1991) (court may dispose of an ineffective assistance claim on the ground of lack of sufficient prejudice).

Defendant also argues that his trial counsel provided ineffective assistance by failing to adequately argue against the State's motion *in limine* to prevent the defense from introducing evidence of the victim's alleged sexual abuse of Vernetta. Defendant contends his counsel

should have argued that the evidence was admissible pursuant to the "completeness doctrine," to show defendant lacked the specific intent to kill, and to impeach the victim's credibility and show his bias for testifying against defendant.

As discussed above, the evidence of the victim's alleged sexual abuse of Vernetta was not admissible under the "completeness doctrine," to show defendant's lack of specific intent, or to impeach the victim's credibility and show his bias. Thus, defendant was not prejudiced by counsel's failure to raise those arguments in the trial court, since those arguments would not have resulted in the denial of the motion. Accordingly, defendant's claim of ineffective assistance fails. *Pecoraro*, 144 Ill. 2d at 13.

■ Finally, defendant argues that the State did not prove him guilty of attempted murder beyond a reasonable doubt. When challenging the sufficiency of the evidence, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *People v. Collins*, 106 Ill. 2d 237, 261 (1985).

Defendant commits attempted murder when, with the specific intent to kill, he does any act that constitutes a substantial step toward the commission of murder. *People v. Hill*, 276 Ill. App. 3d 683, 687 (1995). The specific intent to kill may be shown by surrounding circumstances, including the character of the assault, the nature and seriousness of the injury, and the use of a deadly weapon. *In re T.G.*, 285 Ill. App. 3d 838, 843 (1996).

Viewed in the light most favorable to the prosecution, the evidence established that defendant and three or four other men confronted the victim on the first floor of an apartment building. Defendant said "Let's kill this punk." One of the men held the victim in a "full-nelson," while defendant punched him in the jaw and hit him several times in the face with a 40-ounce beer bottle. The victim lapsed into a coma and suffered brain damage as a result of the beating.

A rational jury could determine from defendant's stated intent to kill the victim, coupled with the brutality of the beating and the victim's resulting injuries, that defendant possessed the specific intent to kill. A rational jury could also determine that defendant's act of beating the victim with his hands and the 40-ounce beer bottle, while the victim was unarmed and prevented from fighting back, constituted a substantial step toward the commission of murder. Accordingly, we affirm defendant's conviction.

Defendant questions the victim's credibility, calling his testimony "inherently unreliable." It is the province of the jury, as trier of fact,

to judge the credibility of the witnesses and determine the weight to be accorded their testimony. *People v. Steidl*, 142 Ill. 2d 204, 226 (1991). In this case, the jury heard the evidence and chose to believe the victim's testimony. We will not substitute our judgment therefor.

For the foregoing reasons, we affirm the trial court. As part of our judgment, we assess defendant $150 as costs for this appeal.

Affirmed.

TULLY and GALLAGHER, JJ., concur.