**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2022 IL App (3d) 200125-U

Order filed November 29, 2022

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2022

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 21st Judicial Circuit, Kankakee County, Illinois. |
| Plaintiff-Appellee, | ) | |
| | ) | Appeal No. 3-20-0125 |
| v. | ) | Circuit No. 19-CF-31 |
| | ) | |
| CARLOS D. VENEGAS, | ) | Honorable |
| | ) | Kathy S. Bradshaw Elliott, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

PRESIDING JUSTICE O'BRIEN delivered the judgment of the court.
Justices Holdridge and Hettel concurred in the judgment.

_____

**ORDER**

¶ 1     *Held*:   Defendant's criminal sexual assault conviction was affirmed on direct appeal when an out-of-court statement by his wife was properly admitted for her impeachment, defendant was not denied his right to counsel of his choice when his counsel effectively withdrew, and the defendant was not prejudiced by any deficiencies in his appointed counsel's representation.

¶ 2     The defendant, Carlos D. Venegas, was charged with criminal sexual assault and aggravated criminal sexual abuse of his stepdaughter. A jury found him guilty of both offenses.

The trial court found that the offenses merged under one-act, one-crime principles, and sentenced the defendant to six years in prison on the criminal sexual assault conviction. The defendant appealed his criminal sexual assault conviction, but he did not challenge the finding that he was also guilty of aggravated criminal sexual abuse. After reviewing the record and the arguments, we affirm.

¶ 3                                    I. BACKGROUND

¶ 4        The defendant was arrested on January 11, 2019, and charged by information with criminal sexual assault (720 ILCS 5/11-1.20(a)(3) (West 2018)) and aggravated criminal sexual abuse (*id.* § 11-1.60(b)) of his stepdaughter, S.E. Count I alleged that on or about December 28, 2018, the defendant knowingly committed an act of sexual penetration with S.E., who was under 18 years old, in that the defendant placed his finger in the vagina of S.E. Count II alleged that, on the same date, the defendant committed an act of sexual conduct with S.E. in that he knowingly placed his hand on the vagina of S.E. for the purpose of the sexual arousal or gratification of the defendant. The defendant appeared in court on January 14, 2019, with his attorney. Bond was set and the matter was continued for arraignment on February 8, 2019. A bill of indictment, with the same two charges, was returned in open court on February 1, 2019. On February 1, 2019, the defendant entered a plea of not guilty, demanded a trial by jury, and made a speedy-trial demand. The matter was set for a jury trial on May 13, 2019, with no objection by the defendant. Prior to the trial on May 13, defense counsel filed a motion to dismiss on speedy-trial grounds, which was denied. The trial court proceeded to seat a jury.

¶ 5        The next morning, prior to the commencement of the trial, the State made a motion to disqualify defense counsel, Eric Davis. The State alleged that Davis had a *per se* conflict of interest because he represented S.E. by meeting with her privately and creating an affidavit that she signed,

2

whereby making himself a potential witness. In court, Davis argued that he was just meeting with a witness, but Davis added that he had just been made aware of another conflict: there was a dating relationship between a member of his staff and a witness in the case, Stuart Litko. Davis conceded that he had a conflict of interest. Accepting Davis's concession of a conflict, the trial court disqualified Davis. The trial court appointed a public defender to represent the defendant and set the case for May 30, 2019, for the setting of a new jury trial date. The defendant's public defender, John Ridge, appeared on May 30. Ridge stated that the defendant was requesting a speedy trial and wanted the quickest date possible. The trial court set the matter for a jury trial on July 22, 2019, with no objection from the defense.

¶ 6        The matter proceeded to trial on July 22, 2019. At trial, S.E. testified that she was 13 years old. She identified the defendant as her stepfather. S.E. testified that she got along with the defendant and never had any problems with him. In December 2018, S.E. attended eighth grade and was in the middle of volleyball season. S.E. testified that she stayed home the evening of December 27, 2018, to play a video game in the basement while her mother and sister went to purchase a new game. S.E. testified that the defendant came downstairs, and she and the defendant talked about various things, like movies, work, and volleyball practice. S.E. was lying on the couch against the defendant's arm and he tickled her in her armpits. S.E. denied that the defendant lifted up her leggings a little and tickled around her hips. S.E. testified that she eventually went upstairs to use the bathroom and have a snack; S.E. denied that the defendant went upstairs at the same time. She did not recall the defendant ever showing her a shaver or trimmer. S.E. denied having a conversation with her volleyball coach, Litko, about the defendant the next day, and she could not recall telling Litko anything about the defendant. After volleyball practice on December 28, 2018, S.E. went home with a friend and stayed at the friend's home for the weekend. S.E. testified that

3

her mother came over to the friend's house later that evening, but S.E. did not talk to her mother and S.E. was not crying. S.E. testified that she was mad at the defendant because he took away her iPhone as a consequence of poor grades.

¶ 7    S.E. had an older phone that was provided by her father, Gerardo E., which the defendant and her mother did not know about. S.E. translated a text conversation that she had with Gerardo E. on December 28, 2018, where S.E. said something happened to her at her mother's house. S.E. testified that she then talked to Gerardo E. on the phone, and she told Gerardo E. that the defendant had touched her the night before. S.E. testified that she told Gerardo E. that the defendant touched her so that she could move to Denver with Gerardo E. and be closer to her boyfriend.

¶ 8    S.E. testified that she recalled talking to Andrea Fox at the Child Advocacy Center (CAC), but S.E. did not remember what she told Fox. S.E. did recall telling Fox that the defendant came downstairs on December 27, 2018, and gave S.E. hugs and kisses and started tickling S.E. S.E. denied telling Fox that S.E. went upstairs with the defendant and denied saying anything about the shaver. The State asked S.E. if she told Fox a number of details regarding the shaver and the defendant touching her, but S.E. denied telling Fox any of it. S.E. denied using the word "clit" and denied that was what she was referencing when she said the "c" word to Fox. However, on cross-examination, S.E. admitted to telling Gerardo E. and Fox that the defendant had touched her, but S.E. testified that she was making up the story at that time because she wanted to go live with Gerardo E. in Denver.

¶ 9    The entire video recording of S.E.'s CAC interview was published to the jury. Defense counsel did not object. In the interview, S.E. told Fox that the defendant came downstairs on December 27, 2018, and gave her hugs and kisses and started tickling S.E. S.E. was uncomfortable with the defendant touching her body. S.E. stated that the defendant wanted her to go upstairs and

4

try his "machine." S.E. told Fox that the defendant pulled down S.E.'s pants and underwear and showed her how to use the trimmer on her thigh. He then started playing with her "down low." The defendant told S.E. that it was her "main spot," but not where a tampon would go. S.E. could not remember the name, but said it began with the letter "c". The defendant was touching that spot with his hands.

¶ 10    At trial, Litko testified that S.E. attended school volleyball practice on December 28, 2019. According to Litko, S.E. was not acting like her normal self. After practice, S.E. asked to talk to Litko, so Litko, S.E., and S.E.'s friend walked from the gym to the cafeteria. S.E. told Litko that a day or two before, S.E. was down in her basement when her stepfather came downstairs and started hugging and tickling her. S.E. thought it was a little weird, but not too unusual. S.E. told Litko that S.E. and her stepfather went upstairs after that, and S.E. told Litko that her stepfather touched her in a private area. Litko did not ask her for any details, and he made a hotline call to the Department of Children and Family Services after S.E. left practice.

¶ 11    S.E.'s sister, M.E., testified that she was 15 years old. M.E. testified that when she returned with her mother from buying the video game, she found S.E. downstairs on the couch, crying. S.E. said she was crying because of something with Gerardo E. in Denver. M.E. was with her mother when they went to S.E.'s friend's house the next evening, but M.E. could not remember the reason they went there. S.E. was crying. S.E. had a conversation with her mother, and M.E. learned that something might have happened between S.E. and the defendant. M.E. testified that she had a good relationship with the defendant, and the defendant had never done anything to make her feel uncomfortable. M.E. was also interviewed by Fox, and a portion of M.E.'s videotaped statement was played for impeachment purposes. Defense counsel objected, arguing that the entire interview

should be published to the jury, but the trial court overruled the objection, stating that it was only allowing the impeachment portions to be admitted.

¶ 12     S.E.'s mother, Veronica Venegas, testified that she had been married to the defendant for five years. Veronica testified that she did not see S.E. after returning with M.E. from buying a new game on December 27, 2018, but Veronica received a telephone call at work the next day from Gerardo E. Based on that conversation, Veronica left work, picked up M.E., and went to see S.E. at her friend's home. S.E. told Veronica that she did not want to go home and that the defendant had touched her. Veronica testified that S.E. did not tell her where the defendant had touched S.E., and Veronica denied that S.E. told her that the defendant touched S.E. in her vagina. According to Veronica, M.E. was also in the room. Veronica recalled talking to Detective Brook Payne, but Veronica did not recall telling Payne that S.E. had told Veronica that the defendant had touched S.E. in her vagina. The State introduced a portion of Veronica's videotaped interview with Payne for impeachment purposes. Defense counsel objected, requesting that the entire interview be published to the jury, on the basis of completeness. The trial court allowed only the impeachment portion to be admitted, but informed defense counsel that, if there was a reason that other parts of the interview were admissible, defense counsel could seek admission. Portions of the recorded interview were published to the jury; in the interview, Veronica stated that S.E. told her that the defendant touched S.E. in her vagina.

¶ 13     Veronica testified regarding a number of text messages between herself and the defendant, which were admitted over the defendant's objection. In her messages with the defendant on December 28, 2018, Veronica told the defendant that S.E. said that the defendant touched S.E. the night before. Veronica asked why the defendant did it, and the defendant responded: "I don't know it just happened I'm very sorry." In another text message, Veronica stated: "She said you played

6

with her clit" and "Is that true????????" and the defendant's response was "I wish this was all a misunderstanding." Veronica testified that some of her messages with the defendant were in reference to her finding out that the defendant was having an affair, which she testified that she also found out about on December 27, 2018.

¶ 14     The defendant testified that he had a very good relationship with both S.E. and M.E. He testified that he went downstairs to greet S.E. on December 27, after Veronica and M.E. left for the store. S.E. gave him a hug and laid down on his lap. He tickled her under her arms and on her leg, and they talked about their respective days. S.E. told the defendant that she had just finished her period, and they discussed trimming pubic hairs. According to the defendant, S.E. wanted to shave, and S.E. asked the defendant if she could use the defendant's beard trimmer. S.E. asked the defendant to show her how to use it. The defendant testified that S.E. sat on the bed and pulled her black leggings down to her knees. He started by showing S.E. how to shave the hair on her thigh. According to the defendant, S.E. then pulled her own underwear to the side and tried to use the trimmer between her legs. The defendant told her it would be better to use the trimmer while she's in the shower, because it was a waterproof trimmer. According to the defendant, S.E. then got up and went back downstairs. The defendant testified that he found out the next afternoon that S.E. had made allegations against him. He talked to Veronica later that evening, and they talked about S.E. and about the fact that Veronica had discovered that the defendant was having an affair.

¶ 15     The defendant's interview from January 9, 2019, with Payne, was published to the jury in its entirety, with no objection from the defendant. Payne also testified regarding the search of the defendant's phone. Two internet searches were found on the defendant's phone, from the evening of December 28, 2018. The first search was "how many years does a person get for being with a minor" and the second was "how many years of jail does a[n] adult get for being with a minor."

Payne also identified some text messages discussing purchasing S.E. a horse. Payne did not recall seeing any reference to an affair by the defendant in the text messages.

¶ 16   During closing arguments, defense counsel argued that the State had no evidence, other than impeachment evidence, and he stated that "[i]mpeachment is not evidence." During the State's rebuttal, the prosecutor argued that "All the evidence that you heard in court, including any impeachment of any of the witnesses, is evidence." Defense counsel's objection, that impeachment was not evidence, was overruled. The prosecutor went on to argue that Veronica, M.E., and S.E. had been impeached at trial, pointing out that Veronica conveniently forgot where S.E. had indicated that the defendant touched S.E. The prosecutor argued "you had to watch the video in order to get the whole story about it. But she says *** that she was touched in her vagina."

¶ 17   The jury found the defendant guilty of both counts, criminal sexual assault and aggravated criminal sexual abuse. The defendant filed a posttrial motion, arguing that the State acted in bad faith to disqualify Davis, the trial court admitted improper impeachment evidence, and the trial court improperly prohibited the defense from explaining inconsistent statements. The trial court denied the motion. The defendant was sentenced on the criminal sexual assault charge to six years in prison.

¶ 18                                    II. ANALYSIS

¶ 19   On appeal, the defendant does not challenge the sufficiency of the evidence for either charge. He does, however, raise several contentions of error by the trial court. The defendant contends that the trial court erred by admitting a portion of Veronica's out-of-court interview. If this court finds that the interview was admissible, the defendant argues that the trial court erred by refusing the defendant's request to publish the entirety of Veronica's and M.E.'s interviews to the jury. The defendant contends that the trial court violated the defendant's constitutional right to

8

counsel of his choice when it disqualified the defendant's private counsel. Lastly, the defendant contends that his appointed counsel rendered ineffective assistance of counsel. We will address these contentions in turn.

¶ 20                                   A. Veronica's Out-of-Court Statement

¶ 21       The defendant argues that the trial court erred by admitting a portion of Veronica's out-of-court interview, where Veronica says that S.E. told her that the defendant touched S.E. in her vagina. The defendant argues that the State used this statement as substantive evidence to prove sexual penetration, a necessary element for a criminal sexual assault conviction. The defendant contends that the State compounded the error by misstating the law regarding impeachment evidence in its closing argument and by arguing Veronica's statement as substantive evidence. The State contends that it only offered Veronica's out-of-court statement as impeachment evidence, and it was properly admitted on that basis. We review a trial court's evidentiary rulings for an abuse of discretion. *People v. Lovejoy*, 235 Ill. 2d 97, 141 (2009).

¶ 22       As a general rule, a witness's out-of-court statement is hearsay and is inadmissible as substantive evidence. *People v. Simpson*, 2015 IL 116512, ¶ 27. We agree that Veronica's out-of-court statement was not admissible as substantive evidence. See *id.* ¶ 34 (an out-of-court statement is not admissible for substantive purposes under section 115-10.1 of the Code of Criminal Procedure of 1963 (the Code) (725 ILCS 5/115-10.1 (West 2018)) when the witness did not have personal knowledge of the events). Our review of the record supports the State's contention that Veronica's out-of-court statement was only offered for impeachment. Prior to publishing a portion of Veronica's out-of-court interview for the jury, the prosecutor specified that it was being offered for the impeachment of Veronica. The defendant contends that this is belied by the fact that the State argued in its rebuttal closing argument that Veronica's out-of-court statement was

9

substantive evidence to prove that S.E. was touched in her vagina, and the State offered no other proof of penetration.

¶ 23    We find that argument unavailing. The indictment charged that the defendant "knowingly committed an act of sexual penetration with S.E. *** in that said defendant placed his finger in the vagina of S.E." The jury instruction on penetration, relevant to this case, says "any intrusion, however slight, of any part of the body of one person into the sex organ of another person." At trial, S.E. denied that the defendant ever touched her inappropriately. But, Gerardo E. and Litko both testified that S.E. told them that the defendant touched S.E. in a private area, but S.E. was not specific. In her CAC interview, S.E. stated that the defendant touched her spot that started with a "c." Ordinarily, a party may use a prior inconsistent statement only for impeachment purposes. *People v. Rodriguez*, 291 Ill. App. 3d 55, 62 (1997). However, a prior statement may be admissible as substantive evidence if it meets the requirements of section 115-10.1(c) of the Code. *People v. Cook*, 2018 IL App (1st) 142134, ¶ 40. That section provides, in relevant part, that a prior inconsistent statement may be offered not just for purposes of impeachment, but as substantive evidence, if the witness is subject to cross-examination concerning the statement; the statement narrates, describes, or explains an event or condition of which the witness had personal knowledge; and the statement is proved to have been written or signed by the witness. 725 ILCS 5/115-10.1(b), (c)(2)(A) (West 2018); see also Ill. R. Evid. 801(d)(1)(A)(2)(a) (eff. Oct. 15, 2015). S.E.'s CAC interview met the requirements of section 115-10.1 of the Code and was properly admitted as substantive evidence of penetration.

¶ 24    We find that S.E.'s statements in her CAC interview, that the defendant touched her "c" word with his finger, with her underwear down, were sufficient to support the defendant's conviction for criminal sexual assault. Illinois courts have concluded that the female sex organ

10

includes the vagina as well as the labia majora and labia minora, the outer and inner folds of skin of the external genital organs. *People v. Gonzalez*, 2019 IL App (1st) 152760, ¶ 44 (*citing People v. W.T.*, 255 Ill. App. 3d 335, 347 (1994); *People v. Ikpoh*, 242 Ill. App. 3d 365, 381-83 (1993)); but see *People v. Maggette*, 195 Ill. 2d 336 (2001) (evidence of touching sex organ over underwear was not sufficient to prove penetration). The evidence of penetration was further supported by circumstantial evidence of the defendant's guilt, particularly the text messages between the defendant and Veronica, where the defendant did not deny that he touched S.E. or played with her "clit," and the defendant's internet searches.

¶ 25      As for the State's rebuttal closing argument, when the prosecutor said "you had to watch the video in order to get the whole story about it. But she says ***that she was touched in her vagina," we find that the prosecutor was referring to S.E.'s CAC interview, not Veronica's interview. Thus, we conclude that the record does not support the defendant's assertion that the State improperly used Veronica's statement or that Veronica's statement was the only substantive evidence to prove sexual penetration. Also, in the State's rebuttal closing argument, defense counsel objected to a statement by the prosecutor: "All the evidence that you heard in court, including any impeachment of any witnesses, is evidence." The trial court overruled the objection. The defendant argues that this statement indicates that the State was attempting to use Veronica's out-of-court statement as substantive evidence. We do not find that the record supports this contention. The prosecutor made the statement in response to a statement made by defense counsel in his closing argument, "[i]mpeachment is not evidence." Reviewing the argument as a whole, the prosecutor was not attempting to convince the jury to use impeachment as substantive evidence, but rather was attempting to explain to the jury that it could consider all the evidence offered at trial, including evidence offered for the purpose of impeaching witnesses. See, *e.g.*, Ill.

11

R. Evid. 613(b) (eff. Sept. 17, 2019) (rule providing when extrinsic evidence of a prior inconsistent statement by a witness is admissible).

¶ 26    The defendant argues that Veronica's out-of-court statement was also not admissible as impeachment evidence because the State did not show that Veronica's trial testimony affirmatively damaged the State's case. The State contends that the defendant failed to preserve this issue for review but, in any event, the portions of Veronica's recorded statement were properly admitted for impeachment purposes.

¶ 27    Although it was erroneously stated in the defendant's posttrial motion that Veronica's statement was not video recorded, the defendant did object to the admission of Veronica's out-of-court statement at trial and argued in his posttrial motion that impeachment evidence was improperly admitted. Thus, we find that this issue was not forfeited. See *People v. Brand*, 2021 IL 125945, ¶ 34 (there is no forfeiture when the trial court "had the opportunity to review the same essential claim that is later raised on appeal").

¶ 28    Under Illinois Supreme Court Rule 238(a), the credibility of a witness can be attacked by any party, including the party calling the witness. However, " '[a] court's witness, or any witness for that matter, cannot be impeached by prior inconsistent statements unless his testimony has damaged, rather than failed to support the position of the impeaching party.' " (Emphasis omitted.) *People v. Cruz*, 162 Ill. 2d 314, 359 (1994) (quoting *People v. Weaver*, 92 Ill. 2d 545, 563 (1982)). Testimony is affirmatively damaging when the party's case is worse off than it would have been had the witness not testified at all and it positively aids the defendant's case. *People v. Blakey*, 2015 IL App (3d) 130719, ¶ 49.

¶ 29    At trial, S.E. denied any inappropriate touching by the defendant. Veronica testified that when she first talked to S.E., at S.E.'s friend's house on December 28, 2018, S.E. did not tell

12

Veronica where the defendant had touched S.E. When asked "Did [S.E.] say that she was touched in her vagina?" Veronica responded "no." The State asked Veronica if she recalled telling Payne that S.E. said the defendant touched S.E. in her vagina, and Veronica replied that she did not recall. Subsequently, the State introduced the video recording of Veronica's interview with Payne, where Veronica does state that S.E. told her that the defendant touched S.E. in her vagina. The State argues that Veronica's denial that S.E. told her where the defendant had touched her was affirmatively damaging to the State's case. Unlike the witness in *Blakey*, 2015 IL App (3d) 130719 ¶¶ 50-51, who professed a lack of memory of a statement he made to the police, Veronica did not just claim a lack of memory but she affirmatively testified that S.E. did not tell Veronica where the defendant touched S.E. We find that testimony was affirmatively damaging to the State's case. Thus, we find that the portion of Veronica's out-of-court interview, where she stated that the defendant touched S.E. in her vagina, was admissible for impeachment purposes.

¶ 30    In any event, even if we found that evidence of Veronica's out-of-court statement was improperly admitted, we find the error to be harmless due to the overwhelming evidence of the defendant's guilt. S.E.'s CAC interview, conducted within two weeks of the incident, was convincing evidence of the defendant's guilt, especially when considered in conjunction with the defendant's own testimony of the incident, the text messages between Veronica and the defendant, and the testimony of Litko and Gerardo E.

¶ 31                                B. Completeness Doctrine

¶ 32    The defendant argues that, if Veronica's and M.E.'s out-of-court statements were admissible, the trial court erred when it refused the defendant's request to publish the entirety of their interviews to the jury. The defendant contends that the unpublished portions of Veronica's interview explained the history of her relationship with the defendant and that Veronica was not

13

sure if she believed S.E. The defendant contends that the unpublished portions of M.E.'s interview would have explained better the relationship between M.E., S.E., and the defendant. The State contends that the trial court did not abuse its discretion in denying the defendant's request to play the entirety of the interviews for the purpose of completeness. Again, we review a trial court's evidentiary rulings for an abuse of discretion. *Lovejoy*, 235 Ill. 2d at 141.

¶ 33    The common-law doctrine of completeness provides that " 'if one party introduces part of an utterance or writing the opposing party may introduce the remainder or so much thereof as is required to place that part originally offered in proper context so that a correct and true meaning is conveyed to the jury.' " *People v. Williams*, 109 Ill. 2d 327, 334 (1985) (quoting *Lawson v. G.D. Searle & Co.*, 64 Ill. 2d 543, 556 (1976)). The Illinois Supreme Court incorporated, in part, the common-law doctrine of completeness in Illinois Rule of Evidence 106. *People v. Craigen*, 2013 IL App (2d) 111300, ¶ 42. Rule 106 states: "When a writing or recorded statement or part thereof is introduced by a party, an adverse party may require the introduction at that time of any other part or any other writing or recorded statement which ought in fairness to be considered contemporaneously with it." Ill. R. Evid. 106 (eff. Jan. 1, 2011). The right to introduce an entire writing or conversation is not absolute; the additional parts of a statement or recording introduced under the completeness doctrine must be relevant. *Williams*, 109 Ill. 2d at 335.

¶ 34    After reviewing the interviews of Veronica and M.E., we conclude that the trial court did not abuse its discretion in limiting the published portions of the interviews to the prior inconsistent statements. The unpublished portions of Veronica's and M.E.'s interviews were consistent with their trial testimony and were largely comprised of inadmissible prior consistent statements. Both had an opportunity to testify at trial regarding motives and their relationship with the defendant. See *People v. Ruback*, 2013 IL App (3d) 110256 (witness statement that was consistent with her

14

trial testimony, but did not explain her later inconsistent statement, was inadmissible under the completeness doctrine). The defendant has failed to establish that the published portions of the interviews caused the jury to be misled.

¶ 35                                          C. Disqualification of Counsel

¶ 36        The defendant argues that the trial court violated the defendant's constitutional right of counsel of his choice when it granted the State's motion to disqualify Davis. The defendant contends that Davis did not have a *per se* conflict of interest because he did not represent S.E. but merely obtained a witness statement from her. The defendant further contends that the trial court erred in failing to ask the defendant if he wanted to waive the potential conflict. The State responds that the trial court did not abuse its discretion in disqualifying Davis because Davis may have been called to testify at trial about the affidavit S.E. signed. Further, Davis acknowledged another conflict in that a member of his staff was dating a witness in the case.

¶ 37        The sixth amendment guarantees a defendant the right to counsel, which includes the right to counsel of choice. U.S. Const., amend. VI; *People v. Rivera*, 2013 IL 112467, ¶ 37. The right to counsel of choice is not absolute, though, and chosen counsel may be disqualified in the event of a conflict of interest. *Rivera*, 2013 IL 112467, ¶ 37. "The advocate-witness rule precludes an attorney from acting as advocate and witness in the same case." *People v. Gully*, 243 Ill. App. 3d 853, 859 (1993); Ill. R. Prof'l Conduct R. 3.7(a) (eff. Jan. 1, 2010). A trial court's decision to disqualify defense counsel will not be disturbed absent an abuse of discretion. *People v. Ortega*, 209 Ill. 2d 354, 360 (2004).

¶ 38        The trial court disqualified Davis based upon Davis's concession that he had a conflict of interest. While Davis argued that he was only interviewing a witness, he also conceded a conflict of interest on the basis that a member of his office was dating a key witness in the case. A defendant

15

is entitled to conflict-free representation, where his attorney's allegiance is "not diluted by conflicting interests or inconsistent obligations." *People v. Green*, 2020 IL 125005, ¶ 20 (quoting *People v. Spreitzer*, 123 Ill. 2d 1, 13-14 (1988)). The record indicates that Davis conceded that he had conflicting interests, and the trial court acknowledged that Davis was effectively disqualifying himself prior to trial. We find no abuse of discretion in that decision.

¶ 39                                    D. Ineffective Assistance of Counsel

¶ 40          The defendant contends that his counsel was ineffective for failing to move for dismissal of the charges against defendant on speedy-trial grounds; failing to ask for a limiting instruction for Veronica and M.E.'s out-of-court statements; and for the cumulative impact of these errors. To prevail on a claim of ineffective assistance of counsel, the defendant must show both that: (1) counsel's performance was deficient, and (2) the deficient performance prejudiced defendant such that he was deprived of a fair trial. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

¶ 41          First, the defendant argues that his counsel was ineffective for failing to move for dismissal on the basis of a statutory speedy-trial violation. The defendant argues that the time period from February 8, 2019, to May 14, 2019, and May 30, 2019, to July 22, 2019, totaled 148 days, so the defendant was not brought to trial within 120 days. The State disagrees, arguing that the defense expressly agreed to the July 22, 2019, trial date.

¶ 42          In Illinois, a criminal defendant has both a constitutional and statutory right to a speedy trial. See U.S. Const., amends VI, XIV; Ill. Const. 1970, art I., § 8; 725 ILCS 5/103-5(a) (West 2018). The speedy-trial statute provides that every person in custody for an alleged offense must be tried within 120 days from the date that person was taken into custody unless delay is occasioned by the defendant. 725 ILCS 5/103-5(a) (West 2018). "Delay shall be considered to be agreed to by the defendant unless he or she objects to the delay by making a written demand for

16

trial or an oral demand for trial on the record." *Id.* The statute "places the onus on a defendant to take affirmative action when he becomes aware that his trial is being delayed." *People v. Cordell*, 223 Ill. 2d 380, 386 (2006). A simple request for trial, before any delay is imposed, is not a sufficient objection under section 103-5 of the Code. *Id.* To prevent the speedy-trial clock from tolling, section 103-5(a) of the Code requires that the defendant object to any attempt to place the trial date outside the 120-day period. *Id.* at 390-91. The defendant can do so by "making a written demand for trial or an oral demand for trial on the record." *Id.* at 391. While the statute does not mandate the use of any "magic words," it requires some affirmative statement in the record requesting a speedy trial. *Id.*

¶ 43　　A counsel's failure to assert a speedy-trial violation cannot establish either prong of *Strickland* if there was no speedy-trial violation. *People v. Staake*, 2017 IL 121755, ¶ 47. Thus, we first must determine whether the defendant's speedy-trial rights were violated.

¶ 44　　In this case, the defendant was taken into custody on January 11, 2019. When defense counsel filed a speedy-trial motion prior to the scheduled trial on May 13, 2019, the trial court found that the delay from the in-custody date until the arraignment on February 8, 2019, was not objected to by the defendant, so it was an agreed delay. The speedy-trial motion was denied, but then defense counsel was disqualified. The matter was set for status on May 30, 2019, with new defense counsel. When new counsel appeared on May 30, he demanded a trial and noted that the speedy-trial clock was running. Defense counsel asked for the quickest day possible, and the court set the case for trial on July 22, 2019, which was beyond the 120-day limit. As stated in *Cordell*, "when the trial court set a date for trial that fell outside of the 120-day limit of section 103-5(a), it was 'delaying' trial and defendant was obligated to object in order to prevent the speedy-trial clock from tolling." *Cordell*, 223 Ill. 2d at 390-91. Since defense counsel did not object after the trial

17

date was set beyond the 120-day limit, there was no speedy-trial violation. Absent a speedy-trial violation, the defendant cannot prevail on his claim of ineffective assistance of counsel on this issue. Even if new defense counsel's failure to object to the July 22, 2019, trial date was deficient performance, the defendant has not shown that he was prejudiced by that action. We note that the May 30, 2019, status date was new defense counsel's first appearance representing the defendant. Also, the defendant does not claim that counsel was ready for trial prior to the trial date.

¶ 45          Second, the defendant argues that defense counsel provided ineffective assistance by not requesting limiting instructions for the prior inconsistent statements of Veronica and M.E. The record indicates that the jury was instructed that any evidence received for a limited purpose should not be considered for any other purpose. However, there was no jury instruction in the record on the use of prior inconsistent statements for only the limited purpose of deciding the weight to be given to the witness's testimony. See Illinois Pattern Jury Instructions, Criminal, No. 3.11 and Committee Note (approved Oct. 17, 2014); Ill. R. Evid. 801(d)(1)(A) (eff. Oct. 15, 2015)). Since Veronica's statement and M.E.'s statement were admissible for impeachment purposes, the jury should have been instructed as to the limited use of that evidence. The State acknowledges defense counsel's deficient performance in not requesting such an instruction, which would have been granted. The State argues that there was no prejudice.

¶ 46          To demonstrate prejudice, the defendant must show a reasonable probability that the outcome of the proceeding would have been different but for counsel's deficient representation. *People v. Myles*, 2020 IL App (4th) 180652, ¶ 47. As noted above, the prosecutor did not argue to the jury that portions of Veronica's out-of-court statement were admissible as substantive evidence of the defendant's guilt. Rather, the prosecutor focused on proper evidence of the defendant's guilt, which included S.E.'s CAC interview where S.E. said that the defendant touched her "down low"

18

and that the defendant touched with his hands the part on S.E.'s body that started with a "c", the defendant's text messages with Veronica and his internet searches, and the testimony of Litko and Gerardo E. regarding S.E.'s timely reports of the touching. Considering the substantial evidence of the defendant's guilt, the defendant cannot establish prejudice from the failure to request a limiting instruction, even if considered collectively for any error in failing to object to the trial date on speedy-trial grounds.

¶ 47                                   III. CONCLUSION

¶ 48          The judgment of the circuit court of Kankakee County is affirmed.

¶ 49          Affirmed.